624 So.2d 1285 (1993)
Mary CASE, et al., Plaintiffs-Appellants,
v.
LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY, et al., Defendants-Appellees.
No. 92-1421.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
*1286 Christopher J. Roy, Alexandria, for Mary Case et al.
Robert L. Redfearn, New Orleans, Victor Herbert Sooter, Alexandria, Joseph Thomas Hamrick, Jr., New Orleans, for Louisiana Medical Mut. Ins. Co., et al.
Ambrose K. Ramsey, III, Metairie, for State, Com'r of Ins.
Before GUIDRY, THIBODEAUX and COOKS, JJ.
COOKS, Judge.
This is a medical malpractice suit alleging on September 26, 1986 Dr. Walter E. Deacon, II, an orthopedic surgeon, negligently severed the ulna and radial nerves in Mary Case's thumb. At issue is whether the trial court properly granted summary judgment in favor of Louisiana Medical Mutual Insurance Company (LAMMICO) finding a policy of malpractice insurance provided by it to Dr. Deacon did not cover the alleged act of malpractice because the incident was not reported during the policy's effective period. We affirm the judgment.

PROCEDURAL HISTORY
On September 25, 1987 Mary Case and her husband filed claims with the Commissioner of Insurance against Dr. Walter E. Deacon, II and Woodview Regional Hospital citing the alleged act of malpractice which occurred on September 26, 1986. The Commissioner of Insurance acknowledged receipt of the complaint noting the policy period extended from July 1, 1986 to July 1, 1987 and further advised that "Dr. Deacon has a reporting endorsement from LAMMICO covering him for any accident occurring while he had coverage with LAMMICO."[1] According to the record, Dr. Deacon filed a voluntary bankruptcy petition on November 5, 1987 listing Mary Case as a creditor and providing the name and address of her attorney for inclusion on the mailing matrix. Notice of the bankruptcy proceeding was forwarded to Mary Case's attorney on November 2, 1987. The creditors initially were advised "no assets" existed in Dr. Deacon's bankruptcy case. Subsequently, Dr. Deacon was judged entitled to a Chapter 7 discharge pursuant to the United States' Bankruptcy Code. Later, the parties were notified that the trustee had discovered assets, unknown previously, which may result in a distribution to creditors. In accordance with the notice instructions, appellants filed a proof of claim form with the United States Bankruptcy Court specifying the alleged act of malpractice committed by Dr. Deacon.
On March 11, 1988, appellants' counselor addressed a letter to LAMMICO requesting that the company designate an attorney representative to defend the claims pending before the Commissioner of Insurance. On March 24, 1988, LAMMICO responded stating the policy it issued to Dr. Deacon did not cover the alleged act of malpractice. On May 12, 1988, the Commissioner of Insurance addressed a letter to appellants' attorney advising:
"In our letter of September 25, 1987 we indicated that Dr. Deacon had purchased a *1287 reporting endorsement from Lammico which entitled him to protection under Act 817.
We have since been advised by Lammico that the defendant was given a quote for the tail but did not purchase the reporting endorsement.
Based on this information we are amending Dr. Deacon's status to `NOT QUALIFIED' and notifying him and all involved parties of this amendment."
On the same date, appellants filed the present suit alleging in material part that LAMMICO's failure to promptly dispute coverage caused them, detrimentally, to rely on the existence of coverage; and, thus, "as a matter of law," this failure compounded by the incorrect information received from the Commissioner of Insurance's office somehow creates a "new claim" against LAMMICO and Dr. Deacon, in solido, for the damages resulting from the alleged act of malpractice.
Against LAMMICO, the suit essentially rested on two theories of liability. The first theory suggested as a consequence of LAMMICO's failure to promptly disclose the absence of coverage, it should be estopped from now denying the existence of coverage. The second theory is more amorphous in nature. It poses (without articulating a firm legal basis) that LAMMICO, as a result of its inaction, pure and simple should be held liable in solido with Dr. Deacon for the harm allegedly occasioned by his negligence. By later amendment, the suit named the State of Louisiana, through the Commissioner of Insurance, as a defendant alleging the erroneous coverage information forwarded to appellants by the Commissioner caused them to forego intervening in Dr. Deacon's pending bankruptcy proceeding; and, as a further result, they sustained injury.
On September 20, 1990, LAMMICO filed a motion for summary judgment contending no genuine issues of material facts existed and as a matter of law it was entitled to judgment dismissing appellants' claims. Attached to the motion was an affidavit from Mr. Henry J. Jumonville, III, LAMMICO's executive vice president, attesting that a true copy of the insurance policy issued to Dr. Deacon was attached reflecting its coverage period from August 1, 1986 to July 1, 1987 and that the policy was canceled effective June 1, 1987 as orally requested by Dr. Deacon and evidenced by Dr. Deacon's letter written on July 31, 1987 requesting an invoice for "tail coverage" through the period of his practice in Louisiana. The affidavit further stated Dr. Deacon did not purchase any tail coverage following this communication. On the policy's face clearly appears the wording "claims made" and a declaration to the effect that it was "written in a CLAIMS MADE form." Responding to the summary judgment motion, appellants raised a hodgepodge of liability theories arguably supporting their claims against LAMMICO, including the following that: (1) No evidence existed to show that Dr. Deacon did not submit a claim to LAMMICO resulting from the alleged act of malpractice prior to the policy's termination; and, (2) at the time Dr. Deacon first applied for malpractice insurance with LAMMICO, it forwarded to him a Prospectus reflecting that the company was offering Dr. Deacon an "occurrence policy;" and, as a result of this representation, the Prospectus language should supersede the "claims made" expression of coverage clearly appearing on the face of subsequent policies issued to Dr. Deacon. Following hearing, the trial judge, in written reasons, denied the motion and noted:
"The Court finds that summary judgment is inappropriate because there exists a genuine issue as to a material fact, specifically whether a claim was made to LAMMICO, the insurer of Dr. Walter E. Deacon, during the effective period of the insurance policy. The movant's affidavit filed in this matter does not state that a claim was not made against LAMMICO during the period the policy was in effect." (Emphasis Added)
LAMMICO filed a second motion for summary judgment again asserting no genuine issue of material facts existed and attached a supplemental affidavit from Mr. Jumonville stating, in pertinent part, the following:
"LAMMICO received its first written communication regarding a claim on behalf of Mary A. Case on October 5, 1987, following her filing of a complaint with the *1288 Commissioner of Insurance Office ("Complaint") on September 26, 1987.
Prior to filing of the Complaint, LAMMICO received no written communication whatsoever from Dr. Deacon or anyone else that a claim had been made against Dr. Deacon, or detailing any specific circumstances which could have resulted in a claim by Mary A. Case or any member of her family.
Therefore, the earliest date on which a claim was "first made" to LAMMICO was October 5, 1987, well after the cancellation of the policy period by Dr. Deacon effective June `1, 1987, as well as after the lapse of the initial term of the policy (which would have occurred on July 31, 1987)."
Appellants did not respond to this motion by submission of opposing memorandum or counter affidavit. After hearing, the trial judge granted LAMMICO's motion for summary judgment. This appeal followed.
Appellants urge the trial judge should not have granted LAMMICO's second summary judgment motion because two genuine issues of material fact still exist. Although LAMMICO's supplemental affidavit recited it received "no written" communication regarding Mary Case's claim, they contend this submission did not eliminate the "possibility" that Dr. Deacon orally advised LAMMICO of Mary Case's potential claim. As a consequence, they argue LAMMICO's failure to mention the absence of any oral communication leaves a material factual issue unresolved because the company acknowledged, in discovery pleadings, that an insured is permitted to submit oral notice of potential claims. Next, they contend the apparent conflict between the offered coverage in the Prospectus forwarded to Dr. Deacon in 1985 and the actual policies issued thereafter present a material question of fact "as to whether Dr. Deacon understood, much less agreed to receiving a claims made policy, in lieu of an occurrence policy." To this already complex scenario of contentions, raising hypothetical facts not pled in the original or amending petitions, appellants seemingly add yet anotherapparently alleging a right of subrogation to any claim Dr. Deacon may have against LAMMICO to assert the policy was reformed by the Prospectus. We reject these contentions as meritless and extending beyond the well pleaded facts found in the record.

SUMMARY JUDGMENT
We have said "summary judgment is proper only where the pleadings, depositions and affidavits show that there is no issue of any fact material to any of the several elements of plaintiff's entire cause of action." Ray's Appliance and Air Conditioning, Inc. v. Heard, 343 So.2d 435 (La. App. 3rd Cir.1977). Whether or not a genuine issue of material fact actually exists is the controlling question which must be answered by careful examination of the record before us. Generally, the party opposing summary judgment cannot rely on "bare allegations" of fact in pleadings but must respond by affidavits setting forth in greater detail those facts showing the existence of a real and material issue. City of Baton Rouge v. Cannon, 376 So.2d 994 (La.App. 1st Cir.1979); Lewis v. Pailet, 349 So.2d 338 (La.App. 4th Cir.1977), writ refused 350 So.2d 1213 (1977); La. C.C.P. article 967. In certain instances, failure of an adverse party to file counter-affidavits will not automatically entitle the moving party to summary judgment if a genuine issue of material fact reasonably exists on examination of the pleadings and other submissions in the case. Jewell v. Thompson, 386 So.2d 689 (La.App. 3rd Cir.1980). However, if an issue of fact is not reasonably found on review of the record and mover is entitled to judgment as a matter of law, the adverse party must provide specific facts showing a genuine dispute still exists. LSA C.C.P. article 967. Moreover, mere factual allegations, in the petition or other submissions, without substance will not prevent rendition of a summary judgment. Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179 (La.App. 4th Cir.1972), writs refused 261 La. 462, 259 So.2d 914 (1972).
I. Policy Coverage. The coverage of LAMMICO's policy extended to payment of damages based on Dr. Deacon's legal liability for acts of malpractice occurring during the policy's effective period, provided a claim was "first made against the insured and reported *1289 to the company during the [same] period," i.e. between August 1, 1986 and July 1, 1987. The policy at issue is more commonly referred to as a "claims made" policy. In accordance with its expressed terms, coverage attaches only if the negligent harm is discovered and reported within the policy period in contrast with "an occurrence" policy which merely requires the commission of the negligent act during the policy's effective period regardless of the date of discovery and reporting. Such policy limitations are not per se impermissible. Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478 (La. 1973). It is well settled "in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract." Livingston Parish School Board v. Fireman's Fund American Insurance Company, supra; Snell v. Stein, 261 La. 358, 259 So.2d 876, 878 (La.1972). In the original petition, appellants did not allege any facts evidencing compliance with the policy's "reporting" condition. Rather, they sought to "estop" LAMMICO from asserting a valid defense to coverage or, alternatively, to create a new in solido claim for recovery against LAMMICO resulting from its failure to inform appellants that the policy did not provide coverage.
We are not convinced appellants' subsequent attempts to enlarge the pleadings by incorporating in memorandum new claims for recovery or presenting new arguments to avoid the policy's reporting limitation created genuine issues of material facts regarding the policy's coverage. Clearly, the policy provided the conditions which had to be met to claim coverage under its terms. It is undisputed that appellants did not provide oral or written notice to LAMMICO during the policy's effective period advising it of the alleged act of malpractice. The first recorded notice of appellants' claims occurred on September 25, 1987 when they filed a petition with the Commissioner of Insurance naming Dr. Deacon as a defendant. LAMMICO acknowledged receiving a copy of the petition on October 5, 1987, long after the effective period of coverage. While LAMMICO stated in supplemental affidavit it did not receive written communication whatsoever from Dr. Deacon regarding a potential claim by Mary Case or any member of her family, more specifically the affidavit expressed "the earliest date on which a claim was `first made' to LAMMICO was October 5, 1987." Further, LAMMICO responding to interrogatories propounded by appellants prior to the hearing stated:
INTERROGATORY NO. 6:
"How and when did you learn of the claim against Dr. Walter E. Deacon, II and present copies of evidence thereof, if available."
Response:
"October 5, 1987, from a copy of a medical review panel filing forwarded by the Commissioner of Insurance ..."
A reasonable reading of the pleadings and other discovery documents contained in the record support the trial judge's conclusion that no genuine issue existed regarding whether a claim was made to LAMMICO during the reporting period. Allegations by appellants, in memorandum, that Dr. Deacon may have communicated with LAMMICO orally apprising it of Mary Case's potential claim without more constitutes at best mere speculation. Appellants did not submit any counter-affidavit specifically setting forth the basis for their belief that such a "possibility" existed. Reference to Dr. Deacon's oral communication with LAMMICO instructing it to discontinue the existing policy earlier than its anniversary date simply does not lend support to appellants' allegation that he "possibly" at the same time orally advised LAMMICO of Mary Case's potential claim.
Also, we reject appellants argument that the Prospectus forwarded to Dr. Deacon in 1985, when he first applied for malpractice insurance with LAMMICO, prevented it from changing the terms in later policies issued to Dr. Deacon from "occurrence" to "claims made" coverage. The Prospectus alone is legally insufficient to alter or modify the terms of the at issue policy which are clear and unambiguous and approved as reflected by Dr. Deacon's signature. Likewise, *1290 appellants' subrogation argument suffers from the same lack of substance because Dr. Deacon did not have a right to protest the policy's terms.
II. Other Liability Contentions. We turn to appellants' contentions that their claims against LAMMICO are maintainable, even if the act of negligence is not covered by the policy, because "as a matter of law" LAMMICO's failure to promptly communicate this to appellants should estop it from raising lack of coverage as a defense.
Estoppel is not favored in Louisiana law. American Bank and Trust Company v. Hannie, 568 So.2d 216 (La.App. 3rd Cir.1990), writ denied, 572 So.2d 64 (La. 1991); Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975); Rodden v. Davis, 293 So.2d 578 (La.App. 3rd Cir.1974), writ refused, 296 So.2d 832 (La.1974). As recognized by the Louisiana Supreme Court in Howard Trucking Co., Inc. v. Stassi, 485 So.2d 915 (La. 1986), cert. denied, 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986):
"`Estoppel' in its various forms seems to be a doctrine of last resort. In Louisiana, no statutory material and no body of jurisprudence justifies its use. In this court we have discussed it, in modern times, only to disallow a claim that the opponent ought not to be able to make a certain claim or defense."
Estoppel claims must be examined carefully and strictly. Kibbe v. Lege, 604 So.2d 1366 (La.App. 3rd Cir.1992), writs denied, 606 So.2d 540 (La.1992) and 606 So.2d 541 (La. 1992); Lamb v. Lamb, 460 So.2d 634 (La. App. 3rd Cir.1984), writs denied, 462 So.2d 1249 (La.1985) and 462 So.2d 1250 (La.1985). Though rarely applied, estoppel may be appropriate if three elements are established: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance or such representation. John Bailey Contractor v. State Department of Transportation & Development, 439 So.2d 1055 (La.1983); Wilkinson v. Wilkinson, supra. A party invoking the doctrine must exercise "such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding." Rodden v. Davis, supra.
Reframed, the questions requiring answer in this case are: (1) Did LAMMICO make any representation to appellants on which they relied? (2) Was their claimed reliance justifiable? (3) Did the reliance work to their detriment?
We are unable to answer all three questions in the affirmative. First, LAMMICO did not overtly represent to appellants that its policy provided coverage for the alleged negligent act. Although, the letter forwarded to plaintiff from the Commissioner's office mistakenly advised that Dr. Deacon had acquired a reporting endorsement from LAMMICO, appellants do not allege the letter resulted from LAMMICO's representations to the Commissioner's office. Furthermore, LAMMICO's failure to promptly advise appellants that coverage was not available does not constitute an "omission" on which they were entitled to rely. The claim filed by appellants with the Commissioner of Insurance named only Dr. Deacon and Woodview Regional Hospital as defendants. LAMMICO did not have a duty to respond to appellants' claims or provide a legal representative to Dr. Deacon absent coverage. Finally, the claimed reliance on LAMMICO's silence did not work to their detriment. The record shows appellants were not harmed by their initial failure to submit a "proof of claim form" in Dr. Deacon's bankruptcy proceeding. On subsequent conversion of the case from a "no asset" to an "asset" case, they were promptly notified of the changed status and they submitted the required "proof of claim" form. "As a matter of law" and jurisprudence, on review of the record, LAMMICO was entitled to summary dismissal of appellants' estoppel claim. For the same reason, LAMMICO also was entitled to dismissal of appellants "in solido" claim. Louisiana's statutory and case law simply does not recognize a party's right to "solidarily bind" defendants to pay damages without an existing companion obligation created by breach of contract or a duty owed to the party.
*1291 Accordingly, the summary judgment of the trial court is affirmed. All costs of this appeal are taxed to appellants.
AFFIRMED.
NOTES
[1] As we understand, "reporting endorsement" and "tailgate coverage" are synonymous terms which, if purchased, in effect extends the reporting period of an expired policy of insurance.