695 So.2d 1012 (1997)
Katherine WARD
v.
Joseph VIZZINI, et als.
No. 94-CA-638.
Court of Appeal of Louisiana, Fifth Circuit.
May 14, 1997.
Rehearing Denied July 17, 1997.
*1013 Harry D. Hoskins, III, Hoskins & Hoskins, New Orleans, for plaintiff-appellant.
James J. Hautot, Lafayette, for defendant-appellee.
Before GRISBAUM, DUFRESNE and CANNELLA, JJ.
GRISBAUM, Judge.
This appeal relates to a "claims made" insurance policy, along with the fiduciary relationship resulting therefrom and related claims. We affirm in part and set aside in part.

FACTS AND PROCEDURAL HISTORY
In 1983, the plaintiff-appellant, Ms. Katherine Ward, went to Mr. Joseph Vizzini, a certified public accountant ("CPA"), for tax *1014 advice. Mr. Vizzini recommended that plaintiff invest in various tax shelters including the Barrister Equipment Associates Series 122 limited partnership ("Barrister"). In 1984, Mr. Vizzini offered the plaintiff the opportunity to participate in a partnership known as Vizzini Arabians III ("Arabians"). The object of this partnership was to buy, breed, show and sell Arabian horses. The plaintiff accepted and participated in both investments.
In 1984, Mr. Vizzini's accounting firm, Vizzini & Dooley, purchased a "claims made" insurance policy from New England Insurance Company. The policy had a retroactive date to 8/24/79 and a term to 8/24/85. Thereafter, Mr. Vizzini purchased a three-year extended reporting period to 8/24/88.
In 1985, the Internal Revenue Service ("IRS") began to send plaintiff notices stating that it did not feel the Barrister tax shelter benefits were allowable. In 1989, Mr. Vizzini concluded that the cost and risk of continuing to resist the IRS challenges to the shelter were too great and advised the plaintiff to settle with the IRS, which she did. In March 1989, after the collapse of the Arabian horse market, the partners voted to liquidate the Arabian partnership and sell the horse for the best possible price. Thereafter, Mr. Vizzini continued to work as plaintiff's accountant until 1991.
On April 15, 1991, Ms. Ward filed suit against Mr. Vizzini and Vizzini & Dooley, a corporation of CPAs. The original petition alleged that Mr. Vizzini breached his duty as a CPA in connection with recommending that plaintiff purchase limited partnership interests in investments having tax benefits. The plaintiff later amended her petition to add as additional defendants the shareholders in Vizzini & Dooley: Mr. William Dooley, Mr. Vizzini, and Mr. Gary Reynolds, asserting therein that these defendants had wrongfully transferred all of the assets of Vizzini & Dooley into a new professional accounting corporation known as Dooley, Vizzini & Reynolds.
The trial court maintained an Exception of No Cause of Action in favor of Mr. Vizzini, based on a discharge in bankruptcy, which Mr. Vizzini had earlier received. In addition, the trial court maintained an Exception of Discussion in favor of Mr. Dooley, Mr. Reynolds, and Mr. Vizzini and ordered the revocatory action against them stayed pending the resolution of the remaining claims.
This matter was tried September 20-24, 1993. The only issues at trial were whether Vizzini & Dooley were liable to Ms. Ward by reason of Mr. Vizzini's recommendation that she invest in Barrister and Arabians and, if so, whether New England Insurance Company provided coverage for those claims. At the close of plaintiff's case, New England moved for a Directed Verdict, which was deferred by the trial judge until the close of all the evidence. At the close of all the evidence, New England renewed its Motion for a Directed Verdict, which the trial judge granted.
The jury responded to special interrogatories submitted to it finding that, with respect to Barrister, Mr. Vizzini had breached his fiduciary duty to the plaintiff, had recommended that she purchase an unsuitable investment, and had breached the standard of care for an accountant expert in tax shelters. The jury further found plaintiff to be 50 percent comparatively negligent with respect to the Barrister investment. With respect to the Arabians investment, the jury found that Mr. Vizzini had breached his fiduciary duty to the plaintiff and had recommended the purchase of an unsuitable investment but had not breached the standard of care for an accountant. The jury found that plaintiff's damages relating to the Arabians investment should be reduced by 25 percent due to plaintiff's failure to mitigate her damages. After reductions, the plaintiff received a judgment for $20,000.00 in damages on the Barrister investment and $221,000.00 on the Arabians investment. It is from this judgment that the plaintiff now appeals.
On November 30, 1993, Vizzini & Dooley filed for bankruptcy. The plaintiff has received permission from the bankruptcy court to proceed with this appeal as it affects Vizzini & Dooley.

ISSUES
We are called upon to determine a number of questions, to-wit:
*1015 (1) Whether "claims made" insurance policies are contrary to public policy;
(2) Whether the trial court erred in concluding that the New England Insurance Company policy provided no coverage for appellant's claims against the appellee, Vizzini & Dooley;
(3) Whether the existence of a fiduciary relationship between appellant and Mr. Vizzini prevented the appellant from being found comparatively negligent; and
(4) Whether the trial court erred in awarding interest from the date of judgment until the time paid.

ISSUE ONE

Law
The insurance policy between Vizzini & Dooley and New England Insurance Company is a "claims made" policy. In her first assignment of error, the appellant alleges that "claims made" insurance policies, as a matter of law, are contrary to public policy to the extent that notice of a claim is required to perfect coverage as to the claim. A "claims made" insurance policy is one in which coverage attaches only if the negligent harm is discovered and reported within the policy period. Case v. La. Medical Mutual Ins. Co., 624 So.2d 1285 (La.App. 3d Cir. 1993). In contrast, an "occurrence policy" merely requires the commission of the negligent act during the policy's effective period regardless of the date of discovery and reporting. Id.
There is no merit to appellant's contention that the "claims made" condition of an insurance policy is contra bonos mores. In Livingston Parish School Bd. v. Fireman's Fund Am. Ins. Co. et al, 282 So.2d 478, 481 (1973) (citations omitted), Justice Tate, speaking for the Court found:
Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible. This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract.
With approval, this language has been cited by this Court, as well as by other circuit courts. See, Reichert v. Bertucci, 94-1445 (La.App. 4th Cir. 1/31/95), 650 So.2d 821; Case, supra; Bank of La. v. Mmahat, Duffy, Opotowsky & Walker, 608 So.2d 218 (La.App. 5th Cir.1992); and Poirier v. Nat'l Union Fire Ins. Co., 517 So.2d 225 (La.App. 1st Cir.1987).

Analysis
The appellant argues that the current matter is distinguishable from Livingston and its progeny, as this matter deals with the claims of a third party against the insurer, rather than the insured against the insurer. In support of this contention, the appellant relies on Williams v. Lemaire, 94-1465 (La. App. 4th Cir. 5/16/95), 655 So.2d 765. It should first be noted that the court in Williams explicitly found the "claims made" clause unenforceable "under the facts of this case." Id. at 769. Under the facts of that case, the Williamses alleged that they had informed the insured during the term of the policy that they intended to institute an action against them. The term of the policy then ended before the insured gave notice to the insurer. Such is not the case here. The policy coverage ended in 1988 and a claim was not made until 1991.
To hold as the appellant urges would have the effect of converting all "claims made" insurance policies into "occurrence" policies. Accordingly, we find the Williams case is distinguishable from the case sub judice and that "claims made" provisions are not contra bonos mores.

ISSUE TWO

Law
We must next determine whether the insurance policy issued by New England Insurance Company provided coverage for appellant's claims against Vizzini & Dooley.
The insurance policy at issue, in pertinent part, provides:
GENERAL POLICY PROVISIONS
In respect of Coverage I Professional Liability this policy is known as a "Claims *1016 Made" policy. Except to the extent as may otherwise be provided herein, this coverage is limited generally to claims arising from the performance of professional services subsequent to the Retroactive Date stated in the Declarations and first made against the Insured while the policy is in force. Please read the policy carefully.
CONDITIONS, AGREEMENTS AND EXCLUSIONSCOVERAGE PARTS 1 AND 5
3. Notice of claim or occurrence
The Insured shall give to the Company or its Authorized Agent immediate notice in writing of any claim made against them during the Policy Period or of any circumstances or occurrence which may subsequently give rise to a claim, and the Insured shall, upon request, give the Company such information as it may reasonably require such shall contain particulars sufficiently to identify the insured and also information respecting the time, place and circumstances of claim, accident or occurrence, the names and addresses of the insured and of available witnesses and every demand, notice summons or other process received by him or his representative.
If any claim for which coverage is provided hereunder is subsequently made against the Insured arising out of the circumstances reported hereunder, it shall be deemed to have been made against the Insured during the Policy Period.
COVERAGE 1PROFESSIONAL LIABILITY
INSURING AGREEMENTS
A. The Company shall pay on behalf of the Insured all sums which the Insured shall be legally obligated to pay as damages because of any negligent act or omission of the Insured, or any other person or organization for whose acts or omissions the Insured is legally responsible, and arising out of professional services for others including Notary Public services and services by the Insured as a member of a formal accreditation, standards review or similar professional board or committee.
CONDITIONS AND AGREEMENTS
3. Period of Coverage
(a) This coverage applies to claims first made against the Insured during the policy period. If during the term of this policy the Insured shall become aware of any negligent act or omission and give notice thereof in writing to the company during the term of this policy, claims or suits subsequently arising therefrom shall be deemed to have been made against the Insured during the policy period.
(b) In the event of cancellation or nonrenewal of this policy the Named Insured shall have the right upon application to the Company to an extension of the coverage granted by this policy in respect of any claims made against the Insured for services performed before the termination of this policy. The consideration for this extended discovery period shall be payment of an additional premium of 100% of the last annual premium for the period of thirty-six (36) calendar months and such extension shall be subject to one policy limit for the thirty-six (36) month discovery period. Application for such extension must be made on or before the termination of the policy.
Thus, under the express terms of the policy, coverage is provided in the following circumstances:
(1) Claims arising from the performance of professional services subsequent to 8/24/79 and first made against Vizzini & Dooley while the policy was in force, i.e., on or before 8/24/85. [Conditions and Agreements 3(a)].
(2) Claims resulting from professional services and made against the insured after the policy period, if during the term of the policy (8/24/84 to 8/24/85) the insured shall become aware of any negligent act or omission and give notice thereof in writing to the company during the term of the policy. [Conditions and Agreements 3(a)].
(3) Claims made during the extended discovery period (8/24/85 to 8/24/88), and arising from professional services performed before 8/24/85.

*1017 Analysis

The claims asserted by the appellant do not fall within any of the three areas of coverage described above simply because the appellant did not file suit until 1991, well after the term of the policy expired (8/24/85), as well as after the expiration of the extended coverage period (8/25/88). Additionally, the trial court found nothing "which would put a reasonable person or a reasonable insurance company on alert that claims are to be filed." We agree. This is supported in that Mr. Vizzini continued to work as appellant's accountant until 1991.
However, the appellant contends that Mr. Vizzini should have been put on notice of a potential claim because another one of his clients, Mr. Bertrand Artigues, filed suit against him in 1987 due to a failed tax shelter. This argument has no merit. The suit by Mr. Artigues involved investments completely different from those entered into by appellant. Additionally, even if Mr. Vizzini had notice of a claim, under the terms of the policy, coverage is not perfected until notice is given to the insurer, which never occurred.
Accordingly, we cannot say the trial court erred in a finding that the New England Insurance Company policy provided no coverage for appellant's claims against Vizzini & Dooley.

ISSUE THREE

Law
The appellant alleges the jury erred in finding her 50 percent comparatively at fault concerning the Barrister deal and in reducing her damages for the Arabian deal by 25 percent for failure to mitigate damages. The appellant argues that, by the very nature of the fiduciary relationship, she cannot be held accountable for her failure to act cautiously or her failure to take action to mitigate her losses. We disagree.
In support of her position she cites Plaquemines Parish Comm'n Council v. Delta Dev. Co. Inc., 502 So.2d 1034 (La.1987). However, Plaquemines does not deal with apportionment of fault between a fiduciary and a third party but, rather, deals with a levee board's reliance on its attorneys in a contra non valentum situation.
Under Louisiana law, the concept of contributory negligence (comparative fault) is based on La.Civ.Code art. 2323, which states:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
Contributory (comparative) negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which a plaintiff must conform for his own protection is that of a reasonable man under like circumstances. Jones v. Trailor, 93-2144 (La.App. 4th Cir. 4/28/94), 636 So.2d 1112. In making a comparative fault determination, the trier of fact must consider both the nature of the conduct of each party and the extent of the causal relationship between the conduct and the damages.
Allocation of fault is subject to the manifest error rule. Reid v. State of La., Through Dep't of Transp. and Dev., et al, 25,778, 25,780 (La.App.2d Cir. 5/4/94), 637 So.2d 618.

Analysis
Simply stated, after careful review, we find nothing to indicate the finder of fact was clearly wrong in his apportionment of fault.

ISSUE FOURLaw and Analysis
The judgment signed by the trial court provides for interest from the date of judgment until paid. This is incorrect. La. R.S. 13:4203 provides that "Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts." Accordingly, we set aside the trial *1018 court's judgment as to the amount of interest awarded.
For the reasons assigned, we affirm that part of the trial court's ruling in finding that the New England Insurance Company policy provided no coverage for appellant's claims against Vizzini & Dooley. Furthermore, the existence of a fiduciary relationship between the appellant and Mr. Vizzini does not prevent appellant from being found comparatively negligent. Finally, the trial court should have awarded appellant interest from the date of judicial demand. Accordingly, we award interest from the date of judicial demand. Each party to this appeal is to bear its respective costs.
AFFIRMED IN PART AND SET ASIDE IN PART.