743 So.2d 708 (1999)
Brenda GARY, Individually and on Behalf of her minor daughter, Jessica Viator, Plaintiff-Appellee,
v.
Philip H. WITHERSPOON, Jr., D.D.S., et al., Defendant-Appellant.
No. 98-1810.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1999.
Calvin E. Woodruff, Jr., Abbeville, for Brenda Gary, Ind., etc.
Richard G. Duplantier, Jr., Michael J. Ecuyer, New Orleans, for National Fire Ins. Co.
Before WOODARD, AMY and SULLIVAN, Judges.
AMY, Judge.
In this medical malpractice matter involving a claims-made insurance policy, the defendant insurer appeals the trial court's denial of its motion for summary judgment and the grant of summary judgment in favor of the plaintiff. The defendant asserts that, because no claim was made within the policy period, there is no coverage under the insurance policy. For the following reasons, we affirm.

Factual and Procedural Background
The facts of this case are undisputed. Dr. Philip Witherspoon treated Jessica Viator for various dental and orthodontic problems from August 11, 1993, through January 25, 1996. The defendant, National Fire Insurance Company, issued a "claims-made" policy to Dr. Witherspoon, which policy had a prior acts date of February 10, 1988. The last policy issued to Dr. Witherspoon had effective dates of February 10, 1995, through February 10, 1996. That policy, however, was canceled by Defendant effective July 13, 1995, and Dr. Witherspoon did not purchase extended reporting coverage.[1] Plaintiff, who did not discover Dr. Witherspoon's acts of malpractice until another dentist treated Jessica on July 2, 1996, instituted suit against Dr. Witherspoon and Defendant on June 9, 1997. Service was made upon Defendant on June 17, 1997, thereby constituting Defendant's first notice of the claim in this matter. Plaintiff took a preliminary default judgment against Dr. Witherspoon on October 21, 1997, and confirmation of that default judgment was entered on November 12, 1997. Defendant filed a motion for summary judgment on August 27, 1997, asserting a lack of insurance coverage for Dr. Witherspoon's alleged malpractice. That motion, however, was denied by the trial judge because he found that Defendant *709 had neither offered any proof of the policy's cancellation, nor had it submitted any evidence demonstrating its lack of notice, during the policy period, of Plaintiff's claim. On March 13, 1998, Defendant reurged its motion for summary judgment, attaching the previously missing evidence as exhibits. Plaintiff also filed a motion for summary judgment on the issue of insurance coverage. At the hearing on the cross-motions for summary judgment, the trial court rendered judgment granting Plaintiffs motion and denying Defendant's motion. In his reasons for ruling, the trial judge stated as follows:
Okay. We do have freedom of contract in this state. That freedom is not unabridged. The claims made language in this insurance policy is, of course, effective between the parties to this insurance contract, but theyit is not effective against third parties because that would be contrary to the public policy as expressed in Revised Statute 22:629 and Revised Statute 9:5628 and Revised Statute 40:1299.45.
The plaintiff was vested with the right at the time the tort occurred, and those rights cannot be taken away by the insured's failure to notify the insurer. However, that failure may, in accordance with the insurance contract, limit the liability of the insurer to the insured. In any event, those are the reasons why I am granting the motion for summary judgment that the plaintiff has filed.
It is from that judgment that Defendant now appeals, presenting the following assignments of error:
A. The trial court improperly denied the motion for summary judgment of National Fire when a properly certified copy of the insurance policy and supporting affidavits were provided and plaintiffs produced no evidence to contradict the cancellation of said policy some twenty-three months before suit was filed.
B. The trial court improperly extended the decision reached in Hedgepeth [v. Guerin, 96-1044 (La.App. 1 Cir. 3/27/97); 691 So.2d 1355, writ denied, 97-1377 (La.9/26/97); 701 So.2d 983] to the facts of this case, declaring that the provisions in the claims-made policy at issue in this case were against public policy, as they are alleged to have limited plaintiffs' right to recover.

Discussion
As an appellate court, we review de novo trial court rulings regarding summary judgments and employ the same criteria as the trial court in conducting that review. See Brunet v. State, 97-1695 (La.App. 3 Cir. 6/10/98); 715 So.2d 560. That criteria is contained in La.Code Civ.P. art. 966, which provides, in pertinent part, as follows:
B. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary *710 burden of proof at trial, there is no genuine issue of material fact.
In the present matter, both parties admit that there is no genuine issue of material fact left for determination. Therefore, in the context of summary judgment, the pertinent question remaining for us is whether the trial court correctly found that Plaintiff was entitled to judgment as a matter of law, while Defendant was not so entitled. At the heart of the problem presented in this case is La.R.S. 22:629, which provides, in pertinent part, as follows:
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
. . . .
(3) Limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13),[2] or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
B. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
Other relevant provisions of law include La.R.S. 9:5628 and La.R.S. 40:1299.45. Regarding the time limitation within which a person must file suit based upon alleged medical malpractice, La.R.S. 9:5628 provides, in pertinent part, as follows:
A. No action for damages for injury or death against any ... dentist ..., whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Concerning malpractice coverage, La.R.S. 40:1299.45 provides, in part:
A. (1) Only while malpractice liability insurance remains in force ... are the health care provider and his insurer liable to a patient, or his representative, for malpractice to the extent and in the manner specified in this Part.
In brief, Defendant urges that nothing in its insurance contract purports to limit the time within which Plaintiff was required to file suit to a period of less than one year. Rather, Defendant submits that the policy provision in question "simply provide[d] a definition of the policy term." That provision states as follows:
YOUR PROFESSIONAL LIABILITY INSURANCE IS WRITTEN ON A "CLAIMS-MADE" BASIS AND PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE THE RESULT OF DENTAL INCIDENTS OCCURRING SUBSEQUENT TO THE PRIOR ACTS DATE, IF ANY, STATED ON THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU WHILE THIS INSURANCE IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST YOU AFTER *711 THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.
Defendant further contends that the trial court erroneously extended the Hedgepeth decision to the instant matter, while Plaintiff submits that Hedgepeth, indeed, applies, and the trial court was correct in so concluding.
In analyzing the issues presented, we find it instructive to trace the jurisprudential developments in this area of the law. In 1973, in Livingston Parish School Board v. Fireman's Fund American Ins. Co., 282 So.2d 478 (La.1973), our supreme court analyzed claims-made policies in the context of the insured-insurer relationship. In that case, a civil engineer who had been sued for a roof collapse occurring three days after the expiration of the policy term, filed a third party demand against his professional liability insurer, seeking coverage for the incident. In answering the question of whether a clause limiting coverage to those claims made during the policy period was against public policy, the supreme court stated as follows:
Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible. This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract.
Id. at 481 (citations omitted). In Case v. Louisiana Medical Mutual Ins. Co., 624 So.2d 1285 (La.App. 3 Cir.1993), a panel of this court also considered the topic of claims-made policies. That case involved a medical malpractice action instituted by a third party against the insured, with the third party seeking to obtain judgment against the physician's insurer. The court, citing Livingston, observed that claims-made "policy limitations are not per se impermissible." Case, 624 So.2d at 1289. In another medical malpractice case, the court found, contrary to the plaintiffs contentions, that the claims-made policy language was clear and unambiguous. Reichert v. Bertucci, 94-1445 (La.App. 4 Cir. 1/31/95); 650 So.2d 821. The court in that case also quoted the Livingston language, and additionally stated the following:
The policy language is clear. The insured is covered if the professional service (or lack of it) occurs during the policy period and the claim is made during that period. By policy definition, a "claim is made" when the insurer or its agent is notified. We find no ambiguity. The language is straightforward and cannot reasonably be subject to multiple interpretations.
Furthermore, the language is not, per se, against public policy, nor do we find any public policy violation in our interpretation of that language. In addition, we know of no statute, nor have we been cited any, which is violated by the provisions in St. Paul's policy.
Reichert, 94-1445, p. 4-5; 650 So.2d at 823. In another case involving a third party suing an insurer, the court found unenforceable, under the facts of that case, that portion of the claims-made policy which required that the insurer be given notice of the claim during the policy period. Williams v. Lemaire, 94-1465 (La.App. 4 Cir. 5/16/95); 655 So.2d 765, writ denied, 95-1514 (La.9/22/95); 660 So.2d 481. The court further distinguished Livingston by observing that that case involved an insured and insurer, two contracting parties. Id. In a case before another panel of this court involving a third party tort victim's suit against a professional liability insurer, the court, citing Williams, found that, "under the Direct Action Statute, [La.R.S. 22:655,] the plaintiff was vested with rights at the time of the tort and those rights could not be taken away because of the insured's failure *712 to notify the insurera condition over which the plaintiff had no control." Murray v. City of Bunkie, 96-297, p. 9 (La. App. 3 Cir. 11/6/96); 686 So.2d 45, 50, writ denied, 97-0514 (La.5/9/97); 693 So.2d 767. The court also distinguished Case in the following manner:
In Case, we did not address the impact of the injured party's rights under the Direct Action Statute. To the extent that Case is in conflict with the views expressed in this opinion, we disagree with it. As set forth above, the contractual notice provision cannot be used to deprive the injured third party of his rights under the Direct Action Statute.
Murray, 96-297, p. 9; 686 So.2d at 50-51. In yet another case involving the question of whether claims-made insurance policies are contrary to public policy, the court, citing Livingston, answered that question negatively. Ward v. Vizzini, 94-638 (La. App. 5 Cir. 5/14/97); 695 So.2d 1012, writ denied, 97-2142 (La.11/14/97); 703 So.2d 632. The Ward court further stated, "[t]o hold as the appellant urges would have the effect of converting all `claims made' insurance policies into `occurrence' policies." Id. at 5; 1015. Lastly, in Hedgepeth v. Guerin, 96-1044 (La.App. 1 Cir. 3/27/97); 691 So.2d 1355, writ denied, 97-1377 (La.9/26/97); 701 So.2d 983, the court considered the validity of claims-made policy language as it pertains to third party tort victims. The plaintiffs had filed a medical malpractice action on July 23, 1986, for an alleged act of malpractice that occurred on October 2, 1985. The insurer was notified of the claim on August 7, 1986. The defendant doctor was covered by a claims-made liability policy with effective dates of January 31, 1985, through January 31, 1986. The policy, however, was canceled by the insurer on November 10, 1985. So, while the alleged act of malpractice occurred within the policy period, suit was filed outside of that period. The court, in reviewing the policy language, found it clear and unambiguous. Pursuant to the policy, the insurer's liability was restricted "to those claims occurring and first made during the policy period." Id. at 6; 1359. Nevertheless, the court did not end its inquiry there. In evaluating the public policy aspect of the claims-made policy, the Hedgepeth court, relying upon La. R.S. 22:629, La.R.S. 9:5628(A), and La.R.S. 40:1299.45, stated as follows:
[Medical malpractice claimants are guaranteed] a period of not less than one year within which to institute a claim against a health care provider and/or his insurer. However, a "claims made" policy, requiring that a claim be made within the policy period, may effectively reduce the time period within which a medical malpractice claimant may institute his action against the insurer.
. . . .
We conclude that a policy provision, which effectively reduces the prescriptive period against the insurer to less than the statutorily mandated period, is without effect. Such a provision would enable an insurer to escape liability for an act of medical malpractice committed shortly before the end of the policy period (e.g., a week or a month), but not reported to the insurer until after the policy was no longer in force. As a result, the effective prescriptive period against the insurer would be reduced from one year to a shorter period. This would be a clear violation of the statutory law, which prohibits limiting a right of action against an insurer to less than one year.
Id. at 13-14; 1363-1364.
In attempting to resolve the difficult issue presented in this case, we initially observe that our supreme court did not hold, in Livingston, that claims-made policy language is always permissible. Rather, the supreme court premised its finding that such language is "not per se impermissible" upon the axiom that insurers may, by contract, limit their liability, "in the absence of conflict with statute or public policy." Livingston, 282 So.2d at 481. However, unlike Livingston and the numerous *713 cases relying upon it, in the instant matter there is an apparent conflict between the policy language at issue and applicable statutory law. In the case of such a conflict, statutory law controls, as legislation is a primary source of law.[3]See La.Civ.Code art. 1.[4] Further, "[a]n insurer is not at liberty to limit its liability and impose conditions upon its obligations that conflict with statutory law." Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La. 1983); See also Trevino v. Prudential Ins. Co., 504 So.2d 1179 (La.App. 3 Cir.), writ denied, 506 So.2d 1230 (La.1987). Additionally, under the facts of this case, we find that Hedgepeth constitutes persuasive authority. Although we are mindful that the plaintiffs in that case filed suit within one year from the act of malpractice, we find that to be an insufficient basis upon which to distinguish Hedgepeth, as Plaintiff here filed suit within one year from her discovery of the allegedly improper dental treatment. That filing was timely under La.R.S. 9:5628.[5] While Defendant urges in this appeal that the claims-made language merely defines the policy term, we disagree. In the instant matter, that language has the effect of limiting Plaintiffs right of action against Defendant "to a period of less than one year from the time when [her] cause of action accrue[d]." That is so because Plaintiffs cause of action did not accrue until Dr. Witherspoon's alleged malpractice was discovered on July 2, 1996. Accordingly, we find that, in this case, the claims-made language is contrary to public policy as clearly and unambiguously expressed by our legislature in La. R.S. 22:629, and is, therefore, without effect.[6] By virtue of that statute, the claims-made language is rendered void. Thus, we find no error in the trial court's determination that, as a matter of law, Plaintiff was entitled to judgment on the issue of insurance coverage, while Defendant was not so entitled.

DECREE
For the foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are assigned to Defendant, National Fire Insurance Company.
AFFIRMED.
NOTES
[1] That type of coverage is commonly referred to as "tail" coverage in practice.
[2] La.R.S. 22:6 classifies insurance, in pertinent part, as follows:

(10) Fire and extended coverage.
(11) Steam boiler and sprinkler leakage.
(12) Crop and live stock.
(13) Marine and transportation (inland marine)
We note that these types of insurance are inapplicable to the instant matter.
[3] Regarding the status of such sources of law as the Louisiana Constitution, La.Civ.Code art. 1, comment (d) states as follows:

Article 1 makes no reference to sources of law such as the Constitution of the United States, federal legislation and executive orders, international treaties, and the Louisiana Constitution. These sources of law are the prius of all Louisiana legislation and need not be mentioned in Article 1 of the Civil Code.
[4] La.Civ.Code art. 1 states as follows:

The sources of law are legislation and custom.
[5] Or at least, that is not an issue before us in this appeal, and Defendant has not asserted that Plaintiff's claim is prescribed.
[6] La.Civ.Code art. 9 provides as follows:

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.