917 So.2d 753 (2005)
L.T., et al., Plaintiffs-Appellants
v.
Berry M. CHANDLER, M.D., et al., Defendants-Appellees.
No. 40,417-CA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
*755 Nelson & Hammons, by John L. Hammons, Shreveport, for Appellants.
Hudson, Potts & Bernstein, L.L.P., by Brady D. King, II, Monroe, for Appellee, Louisiana Mutual Medical Insurance Company.
Berry M. Chandler, In Proper Person.
Before GASKINS, MOORE and LOLLEY, JJ.
GASKINS, J.
The plaintiffs, L.T. and her father, appeal a trial court decision granting summary judgment in favor of Louisiana Medical Mutual Insurance Company (LAMMICO), dismissing the plaintiffs' claims for damages arising from an alleged incident occurring during the medical treatment of L.T. For the following reasons, we affirm the trial court judgment.

FACTS
On December 30, 2000, 17-year-old L.T. was ill with vomiting, loss of appetite, sore throat, cough, and fever. Her mother took her to After Hours Urgent Care Clinic (After Hours) for treatment. While her mother filled out paperwork, Dr. Chandler allegedly took L.T. back to an examining room. The plaintiffs claim that he proceeded to examine L.T. without having a *756 nurse present. L.T. asserts that Dr. Chandler asked her about menstrual periods and whether she was pregnant, even though her major complaint was a sore throat. She contends that while listening to her chest with a stethoscope, Dr. Chandler placed his hand inside her bra and on her breast. He then swabbed her throat, left the room, and returned almost immediately. He informed her that she did not have strep throat. L.T. stated that he wrote on a small piece of paper that she had no gag reflex. He showed the paper to her and told her that this was a good thing. He then threw the paper away. According to L.T., Dr. Chandler decided to give her an antibiotic shot. She pulled her pants down just far enough to expose her hip. He instructed her to pull her pants and underwear down to her ankles. He then massaged her buttock, claiming that this would prevent soreness from the shot. During the course of giving the shot, L.T. claimed that the doctor also ogled her private areas. After giving her the shot, he asked her to lift her shirt again. When she refused, he gave her some Tylenol and caressed the palm of her hand while whispering something she could not hear.
After news accounts aired regarding other similar charges against Dr. Chandler, the plaintiffs decided to pursue their claim. They convened a medical review panel (MRP) and in February 2003, the MRP found that the evidence did not support the conclusion that the doctor, his medical practice, or After Hours failed to meet the applicable standard of care insofar as the treatment of a minor for upper respiratory symptoms. With regard to the allegations of sexual exploitation, the panel found that there was a material issue of fact not requiring expert opinion, bearing on liability for consideration by the court.
In April 2003, the plaintiffs filed their petition against Dr. Chandler, his medical practice, After Hours, and LAMMICO, claiming only that Dr. Chandler breached the duties and obligations owed to L.T. by sexually exploiting her during the office visit in December 2000.
They asserted that Dr. Chandler's exploitative conduct resulted in humiliation, mental anguish and distress, embarrassment, a breach of trust and emotional anguish to his patient, L.T., and to her parents for which all are entitled to full and complete compensation.
In May 2003, LAMMICO answered the plaintiffs' petition, denying coverage. LAMMICO argued that the damages claimed were not the result of a medical incident during the rendition of professional services. LAMMICO pointed to "Exclusion (f)" of the policy which provides:
This insurance does not apply to claims made against the insured for:
(f) any liability arising from undue familiarity, sexual intimacy or assault, sexual harassment, or sexual discrimination, whether or not such conduct is under the guise of professional services.
In June 2003, LAMMICO filed a petition for declaratory judgment asking the trial court to declare that LAMMICO's policy excluded coverage. In December 2004, LAMMICO filed a motion for summary judgment claiming that there was no coverage under its policy for the damages claimed.
In April 2005, the trial court entered a "judgment of partial dismissal with full prejudice" granting LAMMICO's motion for summary judgment. The court found that the LAMMICO policy unambiguously excludes coverage for the claims asserted. The claims against LAMMICO were dismissed with full prejudice at the plaintiffs' cost.
*757 The plaintiffs appealed the trial court decision, arguing that the trial court erred in failing to find that LAMMICO waived its right to assert the coverage defense because it had not done so earlier in the proceedings. The plaintiffs also assert that the trial court erred in failing to find that Dr. Chandler's actions did not comply with the standard of care, thus constituting medical negligence. Finally, the plaintiffs contend that the trial court erred in failing to note that Dr. Chandler's credibility is at issue, making the rendition of a motion for summary judgment inappropriate.

WAIVER
The plaintiffs claim that LAMMICO waived its coverage defense by waiting more than two years after the medical malpractice claim was instituted to assert it. This argument is without merit.
Waiver is the relinquishment of a known right, power, or privilege. Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Gilbert v. B.D.O.W.S., Inc., 33,006 (La.App.2d Cir.6/23/00), 764 So.2d 313; Maddox v. Keen, 33,072 (La.App.2d Cir.4/7/00), 756 So.2d 1279. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered. Maddox v. Keen, supra.
It is well established that an insurer is charged with the knowledge of the contents of its own policy. In addition, notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered. As to coverage, it is the party who seeks to avoid the application of a policy's provisions who must come forward with evidence sufficient to support a waiver. Maddox v. Keen, supra.
The plaintiffs contend that their claim was initiated on April 3, 2001, by filing a request for formation of a medical review panel. They maintain that the Patients' Compensation Fund (PCF) informed them that the defendants were insured by LAMMICO and were qualified health care providers under the Louisiana Medical Malpractice Act. They assert that by participating in the medical review panel process, LAMMICO acknowledged that the plaintiffs' claims were malpractice claims, subject to the provisions of the medical malpractice act, and that Dr. Chandler was an insured and qualified health care provider under the terms of the act. Therefore, the plaintiffs urge that LAMMICO is estopped from denying coverage.
The plaintiffs cite Case v. Louisiana Medical Mutual Insurance Company, 624 So.2d 1285 (La.App. 3d Cir.1993), to support their claim that LAMMICO has waived its coverage defense. In Case, the plaintiffs brought suit to recover damages resulting from medical malpractice. The commissioner of insurance informed the plaintiffs that the doctor had coverage with LAMMICO for any accident occurring during the policy period. The doctor then took bankruptcy and listed the plaintiffs as creditors. However, creditors were initially notified that there were no assets. Later, the plaintiffs were notified that there were assets and the plaintiffs filed a claim in bankruptcy against the doctor. The plaintiffs' lawyer later wrote to LAMMICO requesting that it appoint an attorney to defend the claims against the doctor. LAMMICO then informed the plaintiffs that the doctor had "claims made" coverage *758 requiring that the negligent harm be discovered and reported within the policy period. The doctor did not purchase tail coverage, which would have extended the term for reporting claims occurring during the policy period. The plaintiffs claimed that LAMMICO's failure to promptly dispute coverage caused them to detrimentally rely on the existence of coverage and LAMMICO was estopped from denying coverage. The plaintiffs also alleged that, as a result of its inaction, LAMMICO should be held liable in solido with the doctor for the harm allegedly occasioned by its negligence. LAMMICO filed a motion for summary judgment.
The court in Case noted that estoppel is not favored in Louisiana law and such claims must be examined carefully and strictly. Though rarely applied, estoppel may be appropriate if three elements are established: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance or representation. A party invoking the doctrine must exercise such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding. Case v. Louisiana Medical Mutual Insurance Company, supra.
The court in Case determined that LAMMICO was not estopped from asserting the defense of lack of coverage. It did not overtly represent to the plaintiffs that the policy provided coverage, the failure to promptly advise of lack of coverage was not an omission the plaintiffs were entitled to rely upon, and the claimed reliance on LAMMICO's silence did not work to the plaintiffs' detriment since they were able to file as creditors in the bankruptcy court. The trial court granted summary judgment in favor of LAMMICO, allowing it to assert the defense that the claim was not appropriately made within the policy coverage period. The decision was affirmed on appeal.
The plaintiffs in the present case urge us to apply the principles of estoppel outlined in Case to find that LAMMICO cannot assert its coverage defense. However, as in Case, the plaintiffs have not shown that this is one of those rare instances in which estoppel should be applied.
The MRP findings indicate that a claim covered by LAMMICO was presented to it, along with the claim of sexual impropriety. The "Written Reasons for Conclusion" by the MRP addressed a covered claim of medical treatment for the sore throat and other symptoms, which they found to be within the standard of care. However, when the lawsuit was filed, the plaintiffs only proceeded on the sexual exploitation claim, and did not file a claim for the medical treatment of the upper respiratory problems.
The record does not show that during the MRP process LAMMICO made representations to the plaintiffs that all the claims asserted, including those of sexual exploitation, were covered by medical malpractice insurance. LAMMICO argues that the only statement regarding coverage was made by the PCF when it informed the plaintiffs that Dr. Chandler and the other defendants had policies of insurance with LAMMICO.
No representation was made to the plaintiffs that there definitely was insurance coverage for all claims made. Because there was no such representation, there also was no justifiable reliance which worked to the plaintiffs' detriment. Therefore, the plaintiffs have failed to show that LAMMICO is estopped from asserting its coverage defense. The plaintiffs have also failed to come forward with evidence sufficient to support a finding *759 that LAMMICO waived its coverage defense. LAMMICO raised the defense promptly after being named a party to this suit.

MEDICAL MALPRACTICE
The plaintiffs contend that Dr. Chandler committed medical malpractice by failing to confine his physical examination and verbal inquiry to those actions consistent with the applicable standard of care to which L.T. was entitled. They claim that the trial court erred in finding otherwise. This argument is without merit.
The Louisiana Medical Malpractice Act applies only to "malpractice." All other tort liability on the part of a qualified health care provider is governed by general tort law. "Malpractice" is defined by La. R.S. 40:1299.41A(8) as follows:
A. As used in this Part:
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. [Emphasis supplied.]
A "tort" is defined as any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient shall be to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill. "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. La. R.S. 40:1299.41A(7) and (9); Coleman v. Deno, XXXX-XXXX (La.1/25/02), 813 So.2d 303.
In determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined by the Louisiana Medical Malpractice Act, courts use the following factors:
[1] whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
[3] whether the pertinent act of mission involved assessment of the patient's condition;
[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
[5] whether the injury would have occurred if the patient had not sought treatment; and
[6] whether the tort alleged was intentional.
Coleman v. Deno, supra.
The plaintiffs do not allege in their petition that Dr. Chandler failed to adequately treat Laura's medical condition or that she was physically or emotionally *760 harmed by such a failure. The plaintiffs have not asserted that the medical care rendered involved a dereliction of professional skill or fell below the appropriate standard of care. Although the opportunity for the alleged acts occurred in the context of seeking medical treatment, they were not related to the rendition of that treatment. The plaintiffs' sole allegation is that emotional damages occurred as a result of Dr. Chandler's sexual exploitation of Laura. The plaintiffs have alleged only an intentional tort on the part of Dr. Chandler. Intentional torts are not included in the definition of medical malpractice. The acts complained of fall under general tort principles.

CREDIBILITY
The plaintiffs argue that, because Dr. Chandler's credibility is at issue, summary judgment was not appropriate. They cite the facts that he did not appear for his deposition in this matter and that he pled guilty to one count of dispensing a controlled dangerous substance for a nonmedical purpose and three counts of simple battery, which were reduced from sexual battery. This argument is without merit.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is designed to secure the "just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969." La. C.C.P. art. 966(A)(2); Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002.
In 1997, the legislature enacted La. C.C.P. art. 966(C)(2) which clarified the burden of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Jones v. Estate of Santiago, supra.
The review of a grant or denial of a motion for summary judgment is de novo, under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Jones v. Estate of Santiago, supra; Robertson v. West Carroll Ambulance Service District, 39,331 (La.App.2d Cir.1/26/05), 892 So.2d 772, writ denied, XXXX-XXXX (La.4/22/05), 899 So.2d 577.
In deciding to grant LAMMICO's motion for summary judgment, the trial court was not required to weigh the credibility of Dr. Chandler. In fact, Dr. Chandler has not offered any statements in this record upon which a credibility determination could be made.
Based upon the pleadings, depositions, answers to interrogatories, and admissions on file, it is clear that the only claim raised by the plaintiffs, sexual exploitation, is excluded from coverage under the LAMMICO policy. There is no genuine issue of material fact and LAMMICO, as the mover, is entitled to judgment as a matter of law. The trial court correctly granted summary judgment in favor of LAMMICO.

CONCLUSION
For the reasons stated above, we affirm the decision of the trial court in granting *761 summary judgment in favor of LAMMICO and dismissing the plaintiffs' claims against it. Costs are assessed to the plaintiffs.
AFFIRMED.