# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1106


REGIONS BANK

VERSUS

CARROLL KOUNTZ, ET AL.


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 2000-5827,
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Glenn B. Gremillion, Judges.


**AFFIRMED.**

Jeffrey Ackermann
Durio, McGoffin, Stagg and Ackermann
220 Heymann Boulevard
Lafayette, LA  70503
(337) 233-0300
COUNSEL FOR PLAINTIFF/APPELLANT:
     Regions Bank

James H. Gibson
Allen & Gooch
1015 St. John Street
Post Office Drawer 3768
Lafayette, LA  70502-3768
(337) 291-1000
COUNSEL FOR DEFENDANT/APPELLEE:
     Westport Insurance Corporation

PETERS, J.

This is an appeal from the trial court's grant of a partial summary judgment in favor of Westport Insurance Corporation (Westport), dismissing with prejudice a third-party demand filed by Bryant Kountz (Kountz) against Westport, the professional liability insurer of Donald G. Coffman, Jr. (Coffman), a Baton Rouge, Louisiana attorney. For the following reasons, we affirm the trial court's grant of the summary judgment.

## DISCUSSION OF THE RECORD

The facts as they pertain to the issue now before us are not in dispute. Kountz is a Lafayette, Louisiana businessman, and Coffman was a Baton Rouge, Louisiana attorney. Westport issued Coffman a claims-made policy of professional liability (legal malpractice) insurance covering the period from July 22, 2000, to July 22, 2001, with a retroactive date to July 22, 1997.

Kountz and others invested $150,000.00 in an unsuccessful business venture which, according to Kountz's pleadings, involved South African gold and was spearheaded by Coffman. As a part of the business venture, on June 15, 2000, Coffman issued a $150,000.00 check to Kountz drawn on his client trust account in Whitney National Bank. Kountz deposited the check in an account in Regions Bank in New Iberia, Louisiana, on September 28, 2000. On October 3, 2000, Kountz obtained a cashier's check from Regions Bank in the amount of $150,000.00, based on the September 28 deposit and negotiated that check to a third party. On the next day, Regions Bank received notification that Whitney National Bank had dishonored Coffman's check because the client trust account from which it was drawn had been closed.

On November 2, 2000, Regions Bank instituted suit against Kountz and others in an effort to recover the $150,000.00 it had disbursed by issuing the cashier's check. Kountz responded to the suit by filing a number of pleadings, including a third-party demand against Coffman. This third-party demand, filed on September 27, 2001, named Coffman as a defendant in his capacity as an attorney and asserted an indemnity claim based on various causes of action, including Coffman's role as Kountz's attorney in the unsuccessful South African gold venture.

Kountz amended his third-party demand on October 31, 2001, by adding XYZ Insurance Company as another third-party defendant. The amendment alleged that XYZ Insurance Company was either Coffman's legal malpractice insurer or his commercial general liability insurer, that Coffman had left the state and had not appointed an agent for service of process, and that Coffman's whereabouts were unknown. It further requested that the trial court appoint an attorney to represent Coffman as an absentee defendant. The trial court granted this relief, and, since that date, all appearances on behalf of Coffman in this litigation have been through his appointed attorney ad hoc.[1]

On November 7, 2003, or over three years after Regions Bank filed its suit and over two years after Kountz filed his third-party claim against Coffman, Kountz again amended his third-party demand—this time to name Westport and another insurance company as third-party defendants based on policies of professional liability insurance issued by the two companies insuring Coffman for legal malpractice.

---

[1]Coffman's whereabouts have remained unknown since the events that gave rise to the main demand. No one was able to contact him after his check was dishonored in October of 2000. At the time of the hearing of the motion for summary judgment, it was believed that he had left the country, and it was rumored that he was in Costa Rica.

Kountz asserted in his pleadings that the identity of the two insurers had been discovered only within the two weeks prior to filing the amended third-party demand.

After being served with the third-party demand, Westport responded by filing the motion for summary judgment, which is the subject of this appeal. In its motion for summary judgment, Westport acknowledged that it had issued a professional liability or legal malpractice policy to Coffman, covering the period from July 22, 2000, to July 22, 2001, with a retroactive date to July 22, 1997, but asserted that the policy was a claims-made policy such that coverage extended only to those claims made against it *and* reported to it during the policy period.[2] Westport further asserted that its first notice of Kountz's claim against Coffman occurred on November 17, 2003, when it received service of the third-party demand arising from the November 7, 2003 filing. Because of this chronology, Westport sought a judgment in its favor declaring that there was no coverage relative to the $150,000.00 dishonored check.[3] In support of its motion for summary judgment, Westport filed a copy of the policy issued to Coffman, an affidavit of its authorized agent referring to particular provisions of the policy relative to the notice requirement,[4] and depositions of both Kountz and a Regions Bank representative.

---

[2]Westport's motion for summary judgment pleaded as an additional ground for noncoverage that the relationship between Coffman and Kountz was one of business and not attorney-client. Whether Coffman's conduct was within the professional scope of coverage was not addressed by the trial court and is not now before us.

[3]The other newly named third-party defendant, Continental Casualty Company, answered the amended third-party demand, asserting that it provided Coffman with professional liability insurance for the period from July 21, 2001, through July 22, 2002, and also denied that any claim had been reported to it as required by its claims-made policy. However, that coverage issue is not before us.

[4]The agent also denied receiving any notice of a claim against Coffman. However, in doing so, the affidavit twice referred to "a claim by Regions Bank against Donald Coffman." The claim being denied was, of course, the claim by *Kountz* against Coffman. The reference to having been Regions Bank's lack of notice was obviously a typographical error.

The trial court heard the motion for summary judgment on March 21, 2005, and, on the next day, entered judgment in favor of Westport, granting the motion and dismissing Kountz's third-party demand against it. In reaching this decision, the trial court concluded that the insured under the policy (Coffman) had not complied with the claims-made and notice requirements of that policy and that consequently the policy provided no coverage. The trial court later designated the judgment as a final judgment as authorized by La.Code Civ.P. art. 1915, and Kountz perfected this appeal.

The principal issue in this appeal is whether, considering the terms of Westport's policy and the undisputed facts that appear in the pleadings, depositions and affidavits on file, summary judgment was proper. A second issue raised by the assignments of error is whether summary judgment was proper where Westport failed to establish that it was prejudiced by the delayed notice.

**OPINION**

We review a summary judgment determining insurance coverage de novo, using the same criteria for these insurance issues as those governing the trial court's consideration of whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). "Where the meaning of a contract is to be determined solely from the words upon its face, without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court's findings." *Id.* at 345. Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

4

show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

The specific language of Westport's policy provided Coffman with coverage only for claims made against him and reported to it during the same policy period. The DECLARATIONS page of Westport's policy states the following with regard to the notice requirements:

> This is a Claims-Made and Reported Policy. Except as may be otherwise provided herein, this coverage is limited to liability for only those CLAIMS which are first made against the NAMED INSURED and reported to the Company while the POLICY is in force.

Additionally, under the INSURING AGREEMENTS section of the policy, the following language appears:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any . . . .

Under the DEFINITIONS section of the policy, the following language appears:

> "CLAIM" MEANS a demand made upon any INSURED for LOSS, as defined in each of the attached COVERAGE UNITS, including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED . . . .[5]

Thus, while sometimes referred to by Westport as a claims-made policy, it is better described as a claims-made-and-reported policy. That is to say, it is a policy in which coverage attaches only if the wrongful act is discovered *and* reported to the insurer within the policy period or within sixty days thereafter. This type of policy

---

[5]The filing of suit in a court of competent jurisdiction and venue interrupts prescription. La.Civ.Code art. 3462. However, because there was never personal service on Coffman and the record demonstrates no notice to him by any other means, Coffman never received notice of Kountz's claim in accordance with the requirements of the insurance policy.

is different from an occurrence policy in that the insured peril is different. In an occurrence policy, the peril insured is the occurrence itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. In a claims-made policy, the making of the claim is the event and peril being insured, regardless of when the occurrence took place. *Anderson v. Ichinose*, 98-2157, (La. 9/8/99), 760 So.2d 302. Pure claims-made policies shift to the insured only the risk of claims incurred but not made, whereas claims-made-and-reported policies shift the risks both of claims incurred but not made and of claims made but not reported. *Id.* The purpose of a claims-made-and-reported policy is to alleviate problems in determining when a claim was made or whether an insured should have known a claim was going to be made. *Id.*

In *Livingston Parish School Board v. Fireman's Fund American Insurance Co.*, 282 So.2d 478, 481 (La.1973), the supreme court addressed the nature of claims-made policies and stated the often-cited general rule that "[w]here a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible." In doing so, the supreme court reaffirmed the general principle that, in the absence of conflict with a statutory provision or public policy, insurers may by unambiguous and clear notice provisions "limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract." *Id.*; *see also Anderson*, 760 So.2d 302. However, the general rule enunciated by the supreme court does not end our inquiry because, as the jurisprudence has established, application of the general rule is fact intensive to each case.

This circuit has considered claims-made policies in a number of opinions. In *Case v. Louisiana Medical Mutual Insurance Co.*, 624 So.2d 1285 (La.App. 3 Cir. 1993), this court considered a claim against the insurer of a physician in the context of a medical malpractice action. The malpractice act at issue occurred on September 26, 1986, well within the insurer's policy period of July 1, 1986, through July 1, 1987. The plaintiffs initially brought an action against the physician on September 25, 1987, and the physician's insurer first received notice of the claim on October 5, 1987. The trial court granted the insurer a summary judgment, finding that its claims-made policy provided no coverage for the medical malpractice because the incident was not reported during the policy's effective period. This court affirmed the trial court's judgment, applying the general rule enunciated in the *Livingston Parish School Board* decision. However, in doing so, this court did not address whether any Louisiana statutory provision might have affected the claims-made conditions of the policy.

Applying facts similar to those in *Case*, this court in *Murray v. City of Bunkie*, 96-297 (La.App. 3 Cir. 11/6/96), 686 So.2d 45, *writ denied*, 97-514 (La. 5/9/97), 693 So.2d 767, considered the effect of the policy provisions of a claims-made-and-reported policy when considered in light of the provisions of the Louisiana Direct Action Statute, La.R.S. 22:655.[6] In *Murray*, the plaintiff claimed to have sustained

---

[6]Louisiana Revised Statutes 22:655, provides in pertinent part:

      B. (1) The injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy . . . .

      . . . .

      D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.

damages as the result of the fault of the City of Bunkie in August and September of 1993. The City had a claims-made-and-reported insurance policy in effect at the time which had an expiration date of May 1994. The plaintiff gave notice of his claim to the City in September of 1993, but the City did not report the claim to its insurer. The insurer first received notice of the claim when the plaintiff instituted suit against it in August of 1994. Thus, notice was timely given to the insured during the policy period, but not to the insurer. Basing the decision on public policy considerations as expressed in *West v. Monroe Bakery, Inc.*, 217 La. 189, 46 So.2d 122 (1950) and *Williams v. Lemaire*, 94-1465 (La.App. 4 Cir. 5/16/95), 655 So.2d 765, *writ denied*, 95-1514 (La. 9/22/95), 660 So.2d 481, this court held that the right of the tort victim to sue the insurer directly under the Louisiana Direct Action Statute was a vested right and that the plaintiff could not be divested of this right by the breach of a policy condition requiring prompt notice when the delay was due to the fault of the insured over whom the injured person had no control. In other words, this court reasoned that, if language in a claims-made policy between an insurer and its insured required notice by the insured to the insurer within the policy period thereby defeating an injured party's right to proceed directly against the insurer, that language was against public policy.

We considered a claims-made policy again in the context of a medical malpractice case in *Gary v. Witherspoon*, 98-1810 (La.App. 3 Cir. 6/2/99), 743 So.2d 708. In that case, a dentist was covered by a claims-made policy providing coverage from February 10, 1995, through February 10, 1996, with a retroactive date to February 10, 1988. The dentist treated the plaintiff from August 11, 1993, through January 25, 1996, and, on July 2, 1996, the plaintiff's cause of action accrued when

she discovered the dentist's malpractice. She filed suit against both the dentist and his insurer on June 9, 1997. The insurer first received notice of the claim when it received service of the suit on June 17, 1997.

The filing was timely for prescription purposes under La.R.S. 9:5628, the medical malpractice prescription statute,[7] and this court concluded that disallowing the claim against the insurer would violate La.R.S. 22:629[8] because the claims-made language limited the plaintiff's exercise of her right of action against the defendant to a period of less than one year from the time when her cause of action accrued. The court concluded that it was contrary to public policy as clearly and unambiguously expressed by our legislature by that statute as well as by La.R.S. 9:5628. However, the court was careful to point out that the claims-made language had that "effect" because of the facts "in this case." *Id.* at 713.

---

[7]Louisiana Revised Statutes 9:5628(A) provides:
> *No action for damages* for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care *shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect;* however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

(Emphasis added.)

[8]Louisiana Revised Statutes 22:629 provides, in pertinent part, as follows:
> A. *No insurance contract* delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered *shall contain any condition*, stipulation, or agreement:
> . . . .
> (3) *Limiting right of action against the insurer . . . to a period of less than one year from the time when the cause of action accrues* in connection with all other insurances unless otherwise specifically provided in this Code.
> B. *Any such condition*, stipulation, or agreement in violation of this Section *shall be void*, but such voiding shall not affect the validity of the other provisions of the contract.

(Emphasis added.)

In reaching the conclusion that the facts effectively caused a conflict between the claims-made language and both La.R.S. 22:629 and La.R.S. 9:5628 and that the policy's claims-made reporting requirements had to give way to the statutory requirements, this court in *Gary* considered and found persuasive the decision of *Hedgepeth v. Guerin*, 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355, *writ denied*, 97-1377 (La. 9/26/97), 701 So.2d 983. In *Hedgepeth*, as in *Gary*, the notices complied with the statutes but not with the policy requirements. The medical procedure giving rise to the plaintiffs' malpractice action in *Hedgepeth* occurred on October 2, 1985. The claims-made policy was in effect between January 31, 1985, and January 31, 1986, and the plaintiffs' claim for medical malpractice was initiated on July 23, 1986, and reported to the insurer on August 7, 1986. These dates were outside the policy period but less than one year from the date of the acts giving rise to the medical malpractice action. However, the insurance policy limited its liability to those acts which occurred and were reported prior to the end of the policy's coverage. As a result, the plaintiffs in *Hedgepeth* effectively had less than one year from the date of the act of malpractice to commence the action against the insurer. On those chronological facts, the court in *Hedgepeth* relied upon La.R.S. 22:629, La.R.S. 9:5628(A), and La.R.S. 40:1299.45 in holding that the insurer used the policy limitations to decrease impermissibly the amount of time the medical malpractice plaintiff had to bring suit. The *Hedgepeth* court held that under its facts the policy was unenforceable and without effect to the extent it limited the liability of the insurer to those claims which occurred and were reported while the policy was in force. Accordingly, it held that the "policy would afford coverage to those acts of malpractice which occurred during the policy period, were filed within one year from

10

accrual of the cause of action, and were reported to the insurer within one year of the date from accrual of the cause of action." *Hedgepeth*, 691 So.2d at 1364. The *Hedgepeth* facts met those three requirements, and coverage was afforded.

The court in *Hedgepeth* gave consideration to the Direct Action Statute, which we had applied in *Murray*, 686 So.2d 45. However, unlike *Murray*, where the injured party provided notice to the insured during the policy period, in *Hedgepeth* the plaintiffs did not make a claim during the policy period. Because of that distinction, *Hedgepeth* was not decided on the basis of a violation of the Direct Action Statute. Instead, *Hedgepeth* held that the claims-made policy was unenforceable as contrary to the prescriptive period for insurance and medical malpractice actions and the general principles of the Medical Malpractice Act. *Hedgepeth*, 691 So.2d 1355.

Shortly after the *Gary* case was decided by this court, the supreme court in *Anderson*, 760 So.2d 302, examined a medical malpractice third-party claim involving a claims-made-and-reported policy. There, the doctor's October 1986 misdiagnosis of the cancerous nature of a mole was discovered in December of 1987. In November of 1988, the plaintiffs filed suit against the doctor, and in May of 1995 the plaintiffs amended their petition to add as a defendant the doctor's insurer. The policy period had expired on October 1, 1987, and the supreme court stated that it was significant that "the event that triggered policy coverage [the May 1995 suit against the doctor] did not occur during the policy period." *Id.* at 307. The supreme court further stated that, "[u]nless there is a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume." *Id.* at 306. The decision concluded that the "application of the requirements of the

11

claims-made policy *under the facts of the present case* does not violate public policy." *Id.* at 307 (emphasis added).

The particular question in *Anderson* was "whether the policy's denial of the applicability of coverage, when the professional service occurred within the policy period but the claim was not made or reported until after the policy period expired, violates public policy." *Id.* at 303. The *Anderson* decision addressed the application of the Direct Action Statute and held that the Direct Action Statute did not "extend the protection of the liability policy to risks that were not covered by the policy or were excluded thereby (at least in the absence of some mandatory coverage provisions in other statutes)," stating further:

> The unambiguous terms of the policy in the present case limit coverage to professional services for which claims were made during the policy period. No claim was made against either the insured or the insurer during the policy period, and the insured has no right to coverage under the terms of the policy. Under these circumstances, the Direct Action Statute does not extend any greater right to third party tort victims who were damaged by the insured.

*Id.* at 307.

The court referred to *Murray* and other court decisions on the issue of whether a third-party tort victim, who is denied coverage under a claims-made policy because the timely notified insured failed to notify the insurer timely, may resort to the public policy provisions of the Direct Action Statute to obtain coverage. However, the court held that, because the doctor was not notified of the claim and neither knew nor should have known of the claim during the policy period, it did not need to discuss whether notice to the insured satisfied the policy requirement of notice to the insurer in the absence of prejudice resulting from the delay in notice. *Id.*

12

Although it mentioned parenthetically that mandatory coverage provisions in statutes other than the Direct Action Statute might affect coverage, the *Anderson* decision did not discuss or mention La.R.S. 22:629, nor did it discuss or mention *Hedgepeth,* the first case that had relied principally on La.R.S. 22:629 and held that a claims-made policy was unenforceable when it was effectively contrary to the statutory time allowed for filing insurance actions. We assume that the reason it was not believed necessary to mention that case was because of the factual distinction that in *Anderson* the claim was not reported to the insurer within the policy period and was also not reported until more than a year after accrual of the cause of action.

After *Anderson*, this circuit considered a claims-made policy once again in *Robicheaux v. Adly*, 00-1207 (La.App. 3 Cir. 1/31/01), 779 So.2d 1048. The claims-made medical malpractice policy in that case had a term from January 1, 1995, through January 1, 1996, with a retroactive date to May 7, 1994. The doctor treated the plaintiffs' deceased during the policy period. She died on December 6, 1995. The plaintiffs filed their suit against the doctor on August 16, 1996. The doctor could not be located, and a curator ad hoc was appointed to protect his interests. On December 4, 1996, the curator was served with the petition for damages. We noted in *Robicheaux* that under La.R.S. 9:5628, the medical malpractice prescription statute, the plaintiffs' suit was timely brought against the doctor. However, we also noted that the insurer's first notice of the claim was on February 12, 1999, when personal service was made on its agent for service of process, which was well over two years after suit was timely brought against the doctor and approaching four years after the death of the plaintiffs' deceased. Accordingly, notice to the insurer was too late. We recognized that prior jurisprudence had interpreted La.R.S. 22:629 and La.R.S.

13

9:5628 to hold that a policy provision which effectively reduces the prescriptive period against the insurer to less that the statutorily mandated period is without effect. However, we found that such was not the factual situation in *Robicheaux*. Citing *Hedgepeth* and *Gary* as authority, we stated that "[i]f the alleged incident occurs within the policy period, and a claim is filed outside of the policy period but within one year of the alleged incident, and the insurer is notified of the claim within one year of the alleged incident, coverage will be afforded under the claims made policy in order to conform to Louisiana law." *Id.* at 1054. Because the insurer was not notified of the claim within one year of the alleged incident, we found that the application of the policy language to the particular facts of that case did not impermissibly limit the statutory time granted to bring the claim. We affirmed the judgment finding that there was no coverage.[9]

The first circuit has continued to follow the rule of *Hedgepeth*. In *Bennett v. Krupkin*, 99-2702 (La.App. 1 Cir. 12/22/00), 779 So.2d 923, *writ denied*, 01-193 (La. 3/30/01), 788 So.2d 1190, the court affirmed a final partial summary judgment in favor of the plaintiffs, holding that, as in *Hedgepeth*, the policy provided coverage for the alleged act of malpractice. Under the undisputed facts of *Bennett*, the cause of action accrued on October 25, 1996, the policy period ended January 15, 1997, and the suit against both the insured and the insurer was filed on April 17, 1997. The policy provision reduced the prescriptive period such that the plaintiffs effectively

---

[9]In our opinion in *Robicheaux*, we defined the issue as being "whether the trial court erred in granting [the insurer's] motion for summary judgment despite the statutory language of La.R.S. 22:629, Louisiana's Direct Action Statute, precluding an insurer from limiting the prescriptive period in a policy for a period of less than twelve months." *Id*. at 1051. Obviously, it was an inadvertence that we called La. R.S. 22:629 "Louisiana's Direct Action Statute." The Direct Action Statute is La. R.S. 22:655, not La. R.S. 22:629. We did not perpetuate that inadvertence, however, as we fully discussed the appropriate statutes and expressly found that, when the facts of the case were considered, the policy language did not shorten the statutorily mandated period dictated by either La.R.S. 22:629 or La.R.S. 9:5628.

had less than one year from the date of the accrual of their cause of action to commence the action against the insurer.

In *LeBlanc v. Succession of Raggio*, 00-2407 (La.App. 1 Cir. 2/20/02), 818 So.2d 140, *writ denied*, 02-870 (La. 5/31/02), 817 So.2d 95, a legal malpractice suit brought by the third-party client, the court again applied the rule of *Hedgepeth*. As in *Hedgepeth* and *Bennett*, the claim was made and notice given after the policy terminated. The record in *LeBlanc* disclosed that the alleged act of legal malpractice occurred sometime in 1996. The decision did not state exactly when the act was discovered and the cause of action accrued. The attorney had malpractice insurance from August 6, 1995, to August 6, 1998. The client filed suit against the succession of her deceased attorney on January 14, 2000, amending the petition on January 24, 2000, to join the malpractice insurer whose policy was in effect at the time of the alleged malpractice. This was the first notice the insurer had of the claim. The *LeBlanc* court noted that *Anderson*, although ruling that insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume, qualified its ruling just as had *Livingston* by recognizing an exception if there should be a conflict with statutory provisions or public policy. The *LeBlanc* court concluded that the notice requirement of the claims-made policy conflicted with La.R.S. 22:629 and La.R.S. 9:5605[10] and voided

_____

[10]The attorney malpractice prescriptive statute provides in pertinent part as follows:
   A. *No action for damages* against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services *shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered*; however, even as to actions filed within one year from the date of such discovery, in

15

the terms of the policy regarding when a claim could be made. Finding that the insurer had failed to show it was entitled to judgment as a matter of law, the court reversed the summary judgment granted in favor of the insurance company and remanded the matter for further proceedings. The court stated that, because of the disposition made, it would not consider the plaintiff's additional argument regarding notice to the insurer through notice to the insured. The court stated that it would "pretermit the issue of when notice to an insured satisfies policy requirements of notice to the insurer in the absence of prejudice resulting from the delay in notice." *Id*. at 143.

Other circuits after *Anderson* have considered claims-made-and-reported policies and the effect on coverage when notice to the insurer is not given during the policy period. In *Verhalen v. Forum Health Management, of Georgia, Inc.,* 34,090 (La.App. 2 Cir. 11/3/00), 771 So.2d 238, *writ denied*, 01-72 (La. 3/9/01), 786 So.2d 738, a medical malpractice case, the court, distinguishing its facts from those of *Gary* and *Hedgepeth*, held there was no coverage because the particular facts did not shorten the statutorily mandated period for bringing suit dictated by either La.R.S. 9:5628 or La.R.S. 22:629. The holding in *Sanches v. Morris*, 01-398 (La.App. 5 Cir. 11/14/01), 802 So.2d 755, suggests that the court applied the simple test that coverage is determined by whether or not notice is given to the insurer during the policy period without regard to the presence of any other factors, including any statutory mandate. The case of *Burns v. CLD, Inc.*, 38,998 (La.App. 2 Cir. 10/27/04), 886 So.2d 607, *writ denied,* 04-2906 (La. 2/18/05), 896 So.2d 31, expressly rejected the reasoning

---

all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
(Emphasis added.)

16

of *Hedgepeth*, *Gary*, and *Bennett* and held that because a claim was not made during the policy period there was no coverage.

As the cases we have discussed demonstrate, the problem is a confusing one, and the results have not been entirely consistent. However, the baseline rule which we choose to follow in this case is that appearing in the supreme court's *Anderson* decision and our *Robicheaux* case, both of which were decided on similar facts. Applying the policy language to the facts involved in the case now before us, we conclude that the partial summary judgment in favor of Westport was properly granted.

The insuring agreement in the policy covered a loss by an insured which the insured became legally obligated to pay as a result of a claim first made against the insured during the policy period and reported to the insurer during the policy period or within sixty days thereafter. Although "claim" is defined in the policy as "a demand made upon any INSURED for LOSS . . . including, but not limited to, service of suit," service was not made on Coffman because a curator ad hoc was appointed to represent him, by authority of La.Code Civ.P. art. 5091, *et seq.*, when it was determined that he was an absentee whose whereabouts were unknown. The authority given by statute to an attorney appointed to represent an unrepresented defendant does not include filing a third-party demand. La.Code Civ. P. art. 5095 and its comments. Kountz failed to produce any evidence that Coffman either knew or should have known of the claim during the policy period. Thus, although the suit by Kountz may have interrupted prescription, it was not a demand as required by the policy language to qualify as a claim made within one year of the wrongful act. The claim was made on Westport long after the end of the policy term and more than sixty

17

days thereafter as well as more than a year after the date of the wrongful act. On these facts, the policy language did not impermissibly limit the statutory time granted to assert the claim. There was no coverage under the policy.

There remains for consideration the other issue raised by the appellant, which is whether the policy required the insurer to show that it was prejudiced by delayed notice in order to avoid its obligations. That issue involves an interpretation of the REPORTING AND NOTICE provisions of the policy, from which we quote the following relevant language:

> As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written notice to the Company, provided, that coverage under this COVERAGE UNIT shall not be denied or forfeited solely as a result of the failure of the INSURED to provide such notice as soon as practical, unless such notice is provided later than sixty (60) days after termination of the POLICY PERIOD or the Company proves actual prejudice as a result of the failure of the INSURED to provide such notice. However, breach of this condition shall not result in a denial of coverage with respect to any INSURED who had no knowledge of the CLAIM. Nothing contained herein shall be construed as limiting the reporting requirements of INSURING AGREEMENT I.A.

> Attached to the policy is an AMENDATORY ENDORSEMENT stating:

> It is agreed that the REPORTING AND NOTICE SECTION of the individual COVERAGE UNITS is hereby amended to the extent that coverage will not be denied or forfeited solely as a result of the failure of the INSURED to provide such notice within the POLICY PERIOD or the EXTENDED REPORTING PERIOD unless the Company can demonstrate actual prejudice as a result of the INSURED'S failure to provide such notice.

The appellant argues that this language imposed on Westport the burden of proving it was prejudiced by the delayed notice and that, having failed to offer any evidence of prejudice, it was not entitled to summary judgment in its favor.

We disagree with that strained construction of the policy language. An interpretation of contractual language which would lead to absurd consequences must be rejected as unreasonable.

## DISPOSITION

For the foregoing reasons, we affirm the grant of the partial summary judgment in favor of Westport Insurance Company, dismissing Bryant Kountz's third-party demand against it. We assess all costs of this appeal to Bryant Kountz.

**AFFIRMED.**