STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 07-725

DR. DONALD FALGOUST

VERSUS

HART EYE CENTER, LLC, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2002-3523
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Marc T. Amy, Michael G. Sullivan, Billy Howard Ezell, Judges.

**AFFIRMED IN PART AND REVERSED IN PART.**

Ezell, J., dissents and assigns written reasons.

Albert Dale Clary
Attorney at Law
4041 Essen Lane, #500
Baton Rouge, LA 70809
(225) 922-5110
Counsel for Defendants/Appellees:
Langley, Williams & Co.
Daphne B. Clark

**James Buckner Doyle**
**Attorney at Law**
**P. O. Box 5241**
**Lake Charles, LA 70606-5241**
**(337) 474-9989**
**Counsel for Secondary Defendants/Appellants:**
**Hart Eye Center, LLC**
**Dr. William B. Hart**

**David Harmon Hanchey**
**The Hanchey Law Firm**
**P. O. Box 6510**
**Lake Charles, LA 70606**
**(337) 478-8383**
**Counsel for Plaintiff/Appellant:**
**Dr. Donald Falgoust**

**SAUNDERS, Judge.**

This is a case involving the calculation of damages owed for breach of contract upon the termination of a business relationship between doctors. For the following reasons, we vacate the decision of the trial court regarding reimbursement owed, dismiss with prejudice the issue of damages, and affirm the trial court's ruling regarding its dismissal of the reconventional demand in the case at bar.

**FACTS AND PROCEDURAL HISTORY:**

Dr. Donald C. Falgoust (hereinafter "Dr. Falgoust"), a board certified opthalmologist, began discussions in late 1998 to enter into a medical practice with Dr. William Hart (hereinafter "Dr. Hart") at his medical clinic, Hart Eye Center, LLC (hereinafter "HEC"), in Lake Charles, Louisiana. On June 1, 1999, Dr. Falgoust and Dr. Hart confected a Professional Services Agreement (hereinafter "the PSA"), in which Dr. Falgoust agreed to work at HEC, and in which the doctors set forth the terms of their business relationship.

In relevant part, the PSA reads as follows:

> 5. <u>Payment to Company by Physician for Administration and Buy-in</u>.
>
> a. Subject to the adjustment in Subparagraph (c) below, Physician shall pay Company an amount equal to 15% of gross collections for administrative services and for the acquisition of an interest in the ownership of the Company . . .
>
> . . . .
>
> c. After the initial 12 months of this agreement, if Physician and Company agree to extend the term of this Agreement, Physician shall become a member of the Company. In such event, Physician shall continue to pay Company 15% of Physician's gross collections for an additional 48 months beginning on July 1, 2000 and continuing through June, 2004. After June 30, 2004, the percentage charged to Physician for administrative services and "buy-in" shall be reduced from 15% to 5% and all sums due by Physician for his membership interest in the Company shall be deemed fully paid and nonassessable. Nothing herein shall be deemed to restrict the ability of Physician to acquire

additional membership interest in Company in accordance with the operating agreement.

. . . .

13. <u>Payment Upon Termination</u>. The Physician shall be paid net collections due after date of termination (by reason of death, discharge, disability, retirement or voluntary withdrawal) as provided below in this Agreement.

a. The "Net Collections" of a terminating Physician shall be the actual collections of accounts receivable, attributable to terminating Physician's Professional Services outstanding on the date of the termination, less the sums due by Physician as set forth in Sections 5 and 6. This computation shall be made in a manner consistent with Section 7.

i. All Amounts paid or to be paid to Physician under this Agreement shall also be reduced by the premiums due for the purchase by Company of a "tail" errors and omissions insurance policy for Physician with limits of not less than $100,000/$300,000 per occurrence and participation in the Louisiana Patient's Compensation Fund for Physician. Physician shall have the option to be included as a named insured under the provisions of said insurance policy; and

ii. All amounts to be paid to Physician under this Agreement shall be further reduced by any other debts owed by Physician to Company including but not limited to any amounts due Company for Physician's purchase of his capital interest in the Company as provided in subsection 5(c), (d), or (e).

. . . .

14. <u>Non-Competition Agreement</u>.

a. Except as provided herein, if Physician and Company terminate this agreement with or without cause on or before July 1, 2004, Physician shall not, for a period of two (2) years from and after the date of termination of this Agreement, directly or indirectly, own any interest in, manage, operate, be employed by, control or participate to any extent to the ownership, management, operation or control of, or be connected in any manner with, any business which in any manner competes with Company, its successors, assigns and/or joint venturers in the practice of medicine in the specialty of opthalmology or optometry within Calcasieu Parish. After July 1, 2004 this condition shall continue to apply to Physician unless this agreement is terminated by Company voluntarily and without cause. For purposes of this non-competition agreement the term "Physician" shall also include Donald C. Falgoust, individually.

b. In the event of a breach of this non-competition agreement,

2

Company shall be entitled to injunctive relief against Physician for such breach, which injunctive relief shall be cumulative to other remedies and in addition to any other relief ordinarily available, and shall not be construed as an exclusive remedy or relief[.]

. . . .

16. <u>Complete Agreement</u>. This Agreement constitutes the full, entire, and complete employment agreement between the parties hereto and expressly supersedes any prior agreement concerning the matters covered hereby. This agreement may be amended and any right or remedy may be waived, but only by the express terms and provisions of a written amendment or waiver. Other written agreements executed by both parties are part of the entire legal relationship between the parties to this Employment Contract.

The parties continued to operate under the terms of the PSA until it was terminated by Dr. Falgoust on May 15, 2002. During that time, Dr. Falgoust made "buy-in" payments under the PSA totaling $211,201.00. On July 18, 2002, Dr. Falgoust filed suit for breach of contract against HEC and Dr. Hart in the 14th Judicial District Court in Calcasieu Parish, Louisiana, seeking reimbursement of the total amount of his "buy-in" payments. Dr. Hart and HEC subsequently filed a reconventional demand against Dr. Falgoust seeking damages for, among other things, unfair trade practices and breach of a non-competition agreement.

This case was previously before this court on an appeal by Dr. Falgoust from a summary judgment dismissing all of his claims. *See Falgoust v. Hart Eye Center, LLC*, 04-40 (La.App. 3 Cir. 5/12/04), 875 So.2d 139. There, we reversed summary judgment and remanded the case for a trial on the merits. On remand, Judge Wilford Carter) hereinafter "Judge Carter") found in Dr. Falgoust's favor after a bench trial on December 11, 2006. Judge Carter awarded Dr. Falgoust $31,598.00 in damages and dismissed the reconventional demand of Dr. Hart and HEC. A written judgment in accordance with Judge Carter's ruling was signed on February 22, 2007. Dr.

3

Falgoust timely appealed, asserting as error that the trial court's damage award was improperly low. Dr. Hart and HEC also assert that the trial court erred by awarding Dr. Falgoust any damages, by considering extrinsic evidence in its interpretation of the PSA, and by dismissing their reconventional demand without proper consideration.

**DR. HART & HEC's ASSIGNMENTS OF ERROR:**

1.  Did the trial court commit error in awarding Dr. Falgoust $31,598.00 in reimbursement of his ownership "buy-in" payments?

2.  Did the trial court commit error in considering extrinsic evidence in its interpretation of the PSA?

3.  Did the trial court commit error in dismissing Dr. Hart and HEC's reconventional demand?

**DR. FALGOUST'S ASSIGNMENT OF ERROR:**

1.  Did the trial court commit error by awarding only $31,598.00 in damages to Dr. Falgoust for reimbursement of his ownership "buy-in" payments?

**DR. HART AND HEC'S & DR. FALGOUST'S ASSIGNMENTS OF ERROR #1:**

In his only assignment of error, Dr. Falgoust asserts that the trial court erred in its calculation of Dr. Falgoust's damages, in that the award of $31,598.00 granted to Dr. Falgoust for reimbursement of his ownership "buy-in" payments is improperly low. Similarly, in their first assignment of error, Dr. Hart and HEC also argue that the trial court committed error in calculating Dr. Falgoust's damages, in that awarding Dr. Falgoust any reimbursement at all for "buy-in" payments is not supported by a proper interpretation of the PSA. Because both assignments of error hinge upon the

4

interpretation of the agreement in question, we will address them together.

"Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the meaning of the words are clear and explicit and lead to no absurd consequences, *no further interpretation may be made in search of the parties' intent*." La.Civ.Code art 2046 (emphasis added). "[W]hen a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit." *St. Mary Operating Co. v. Guidry*, 06-1495, p. 6 (La.App. 3 Cir. 4/4/07), 954 So.2d 397, 402, *writ denied*, 07-962 (La. 6/29/07), 959 So.2d 520 (citing *Martin Exploration Co. v. Amoco Prod. Co.*, 93-349 (La.App. 1 Cir. 5/20/94), 637 So.2d 1202, *writ denied*, 94-2003 (La. 11/4/94), 644 So.2d 1048). "Where the meaning of a contract is to be determined solely from the words upon its face, *without the necessity of extrinsic evidence*, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court's findings." *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991)(emphasis added); *see also Regions Bank v. Kountz*, 05-1106 (La.App. 3 Cir. 5/31/06), 931 So.2d 506. Thus, so long as the wording of the PSA conveys a clear and explicit meaning and leads to no absurd consequences, this court may interpret its language without deference to the interpretation of the trial court, and must determine its meaning without the use of extrinsic evidence.

Dr. Hart and HEC argue that the amount owed to Dr. Falgoust upon termination of the PSA was clearly and explicitly spelled out by the language contained therein, such that the letter of that language should control the damage calculation of the case at bar. Specifically, Dr. Hart and HEC argue that Paragraph

5

5 of the PSA—entitled "Payment to Company by Physician for Administration and Buy-in"—dictates that Dr. Falgoust is owed no reimbursement for his ownership "buy-in" payments. We agree.

The trial court saw fit to award Dr. Falgoust $31,598.00 in reimbursement upon his termination of the PSA on May 15, 2002. This payment apparently was meant to serve as restitution for equipment that Dr. Falgoust purchased for HEC and did not take with him upon terminating the PSA. Although such a refund could conceivably be owed to Dr. Falgoust had he acquired an ownership interest in HEC prior to the termination of the PSA, Section 5(c) of that agreement makes clear that such an ownership interest could not have developed until at least June 2004: "Physician shall continue to pay Company 15% of Physician's gross collections for an additional 48 months beginning on July 1, 2000 and continuing through June, 2004. After June 30, 2004 . . . all sums due by Physician for his membership interest in the Company shall be deemed fully paid and nonassessable." Thus, when Dr. Falgoust terminated the PSA in May 2002, he had not yet attained the character of an owner of HEC. As such, because Dr. Falgoust never acquired an ownership interest in HEC, Dr. Hart and HEC correctly argue that they owe Dr. Falgoust nothing in terms of reimbursement of his "buy-in" payments. Whatever the amount of reimbursement that Dr. Falgoust may have been owed had he acquired such an ownership interest, his termination of the PSA prior to June 2004 precludes him from now asserting a claim for reimbursement as an owner of HEC.

Accordingly, we vacate the trial court's decision awarding Dr. Falgoust $31,598.00 in "buy-in" reimbursement and dismiss the issue of damages in the instant case with prejudice. Dr. Falgoust's related assignment of error requesting an increase

6

in the reimbursement award is without merit.

We note further that Paragraph 5 of the PSA dovetails agreeably with Paragraph 13, entitled "Payment Upon Termination." Under this section, upon termination of the contractual relationship, HEC is obligated to pay Dr. Falgoust his "Net Collections", which is defined therein as "the actual collections of accounts receivable, attributable to terminating Physician's Professional Services outstanding on the date of termination, less the sums due by Physician as set forth in Sections 5 and 6." As such, upon terminating the PSA, the amount due to Dr. Falgoust under this paragraph served as the only amount owed to him under the agreement. Dr. Falgoust concedes that these "actual collections" have in fact been paid to him and argues instead that he is owed a reimbursement of his "buy-in" payments. As previously discussed, we find no such "buy-in" equity provided for in the contract. The payment that is owed upon termination is clearly set out in Sections 5 and 6, and that amount has been paid. The contract is thus clear and unambiguous, and has been enforced as a whole.

**DR. HART & HEC'S ASSIGNMENT OF ERROR #2:**

In their second assignment of error, Dr. Hart and HEC argue that the trial court committed error by considering extrinsic evidence—or, evidence not contained in the body of an agreement or contract—in its interpretation of the PSA. Specifically, Dr. Hart and HEC contend that because no evaluation of the PSA limited to the four corners of that document could have led Judge Carter to the conclusion that Dr. Falgoust was owed $31,598.00, Judge Carter must have considered some evidence external to the PSA in arriving at this sum. Because we find the PSA to be clear and unambiguous, we agree that the consideration of extrinsic evidence would not be

appropriate in the case at bar. However, as we have already afforded Dr. Hart and HEC the remedy sought by this assignment of error, we find this argument to be moot.

**DR. HART AND HEC'S ASSIGNMENT OF ERROR #3:**

In their third assignment of error, Dr. Hart and HEC assert that the trial court erred in dismissing their reconventional demand charging Dr. Falgoust with misappropriation of trade secrets under the Unfair Trade Practices Act (hereinafter "UTPA"), La.R.S. 51:1401, *et seq*., and in not finding Dr. Falgoust liable for violation of the "Non-Competition" clause of the PSA. We will address each assertion in turn.

**UTPA:**

The standard of review of a trial court's decision not to award damages alleged in a reconventional demand is whether the court's factual findings were manifestly erroneous or clearly wrong. *Begnaud v. Camel Contractors*, 98-207 (La.App. 3 Cir. 10/28/98), 721 So.2d 550, *writ denied*, 98-2948 (La. 2/5/99), 738 So.2d 1. Thus, unless the record shows the trial court to be clearly wrong in its decision to dismiss Dr. Hart and HEC's reconventional demand, the dismissal must stand.

Dr. Hart and HEC argue that the trial court erred in dismissing the reconventional demand without properly considering the evidence presented in support, thereof—namely, a proferred deposition containing the testimony of Mr. Michael Platt, the owner of a software vendor doing business with HEC. Specifically, Dr. Hart and HEC contend that Mr. Platt's deposition supports their claim that Dr. Falgoust violated the UTPA by using Mr. Platt's medical software to improperly acquire confidential patient information from HEC.

In support of such contention, Dr. Hart and HEC cite *Huey T. Littleton Claims*

8

*Service, Inc. v. McGuffee*, 497 So.2d 790 (La.App. 3 Cir. 1986). There, this court held that an ex-employee of an insurance claims adjusting firm violated the UTPA when he copied his employer's confidential client lists before going into business for himself. As the language of that opinion makes clear, however, the liability of that defendant under UTPA hinged on his engaging in the improper conduct before he left the employ of the plaintiff: "From the facts in this case, it is crystal clear that defendant, John McGuffee, violated La.R.S. 51:1401, *et seq.*, by soliciting his employer's customers *prior to resigning*." *Id.* at 794 (emphasis added); *see also DuFau v Creole Eng'g*, 465 So.2d 752, 758 (La.App. 5 Cir.), *writ denied*, 468 So.2d 1207 (La.1985)("The solicitation and diversion of an employer's customers *prior* to termination constitutes unfair competition entitling the plaintiff to recover damages."). Thus, unless the record evidence in support of Dr. Hart and HEC's UTPA claim—which consists solely of Mr. Platt's deposition—establishes that Dr. Falgoust appropriated HEC's client information before the termination of the PSA, the trial court's dismissal of the UTPA claim will not be manifestly erroneous.

Dr. Falgoust argues that Mr. Platt's deposition does not establish such wrongful conduct prior to the termination of his employment relationship with HEC. We agree. In the deposition, Dr. Falgoust's attorney, Mr. David Hanchey, asked Mr. Platt: "At some point, were you consulted, once you learned that Dr. Hart and Dr. Falgoust would be separating, to provide Dr. Falgoust with some information on patients before he left?" In response, Mr. Platt replied: "Not—before he left [sic]? I don't know about before he left . . . ." As such, Mr. Platt's deposition proves wholly insufficient in establishing Dr. Falgoust's appropriation of trade secrets prior to the termination of his association with HEC. Even assuming arguendo that everything

9

in Mr. Platt's deposition is factually correct, that deposition, alone, is simply not enough to prove Dr. Falgoust's liability under the UTPA. Thus, we find Dr. Hart and HEC's argument regarding their UTPA claim to be without merit.

**NON-COMPETITION CLAUSE**:

Dr. Hart and HEC further argue that the trial court erred in not finding Dr. Falgoust liable for violating the "Non-Competition" clause of the PSA. We find this argument to be without merit. Dr. Hart and HEC's claim for breach of the "Non-Competition" agreement here was dismissed by the trial court via summary judgment on September 3, 2003. Although they devolutively appealed from that judgment at an earlier juncture of this case, Dr. Hart and HEC moved on November 18, 2003, to voluntarily dismiss such appeal. Thus, the judgment dismissing the non-competition claim against Dr. Falgoust is final, and cannot now be resurrected on appeal.

**CONCLUSION:**

For the above-stated reasons, we vacate the trial court's decision regarding reimbursement owed to Dr. Falgoust, dismiss with prejudice the issue of damages, and affirm the trial court's dismissal of Dr. Hart and HEC's reconventional demand. Costs are to be shared by the parties.

**AFFIRMED IN PART AND REVERSED IN PART.**

**DR. DONALD FALGOUST**

**VERSUS**

**HART EYE CENTER, LLC, ET AL.**

EZELL, J., dissenting.

I have read the majority's opinion in this case, and I must respectfully dissent. Upon reading the contract, I find that it provides for what would happen should these parties form a surgical center and optical shop, but fails to set forth what happens with distribution of Dr. Falgoust's interest in this company upon termination. It is clear to me that Dr. Falgoust is an owner and has an interest in the company. It is also clear that the agreement does not set forth what will happen to the funds paid in by Dr. Falgoust in the buy-in portion of the agreement should there be a termination of the agreement. The contract is ambiguous and thus, extrinsic evidence should be allowed to clarify the meaning of the contract.

I would find that Dr. Falgoust is an owner and he is entitled to have his interest of ownership and that interest should be determined. Dr. Hart's position to limit Dr. Falgoust's recovery to only accounts receivable does not make sense. The contract provided that Dr. Falgoust owned his accounts receivable outright after the first year of the parties relationship irrespective of his buy-in payments. Since, both parties testified that ownership issues regarding the company were not to be governed by the PSA, it is clear that nothing in this contract sets forth how the buy-in payments would be treated upon termination.

There is nothing in the PSA to support Dr. Hart's position that Dr. Falgoust had to complete buy-in payments to become an owner in the company. The evidence

clearly shows that the buy-in payments were made for the purpose of investing in ownership of the company.  This court found in an earlier appeal that the "express language" of the PSA between the two parties support Dr. Falgoust's claim that he made buy-in payments for the purpose of purchasing an ownership interest in the company.

In view of the facts set forth above, I would reverse and remand for further testimony to determine the percentage of ownership interest.  I would further affirm the reimbursement payments of $31,598.