NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1468

JOYCE GORMAN

VERSUS

CITY OF OPELOUSAS, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 10-C-4849-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

J. DAVID PAINTER
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Marcus A. Allen, Sr.
Attorney At Law
631 E. Simcoe Street
Lafayette, LA  70501
(337) 289-1726
COUNSEL FOR DEFENDANT:
    Chadwick King

**Pride J. Doran**
**The Doran Law Firm**
**P. O. Box 2119**
**Opelousas, LA 70571**
**(337) 235-3989**
**COUNSEL FOR DEFENDANT-APPELLANT:**
     **City of Opelousas**

**James S. Gates**
**Morrow, Gates & Morrow, LLC**
**P. O. Drawer 219**
**Opelousas, LA 70571-0219**
**(337) 942-6529**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
     **Joyce Gorman**

**Keely Y. Scott**
**Donohue, Patrick & Scott**
**P. O. Box 1629**
**Baton Rouge, LA 70821-1629**
**(225) (214-1980**
**COUNSEL FOR DEFENDANT-APPELLEE:**
     **Lexington Insurance Company**

**PAINTER, Judge.**

Plaintiff, Joyce Gorman (Gorman), and Defendant, the City of Opelousas (the City), appeal the trial court's grant of summary judgment in favor of Lexington Insurance Company (Lexington), the City's insurer, in this wrongful death suit. For the following reasons, we affirm the grant of summary judgment in favor of Lexington as to the City; however, we reverse the grant of summary judgment in favor of Lexington as to Gorman, and remand the matter to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Gorman's son, Brian Armstrong (Armstrong), was incarcerated at the Opelousas City Jail on September 28, 2009, when he was beaten by two other inmates. Armstrong died as a result of the injuries. Gorman filed suit for wrongful death on September 27, 2010. She named the City, the Opelousas Police Department, and the two inmates as defendants. The original petition made no mention of any insurance company. The City was served with the petition on September 30, 2010, and filed its answer on November 24, 2010.

On or about December 2, 2010, Gorman filed discovery requests seeking the identity of any companies providing insurance to the City and/or the Opelousas Police Department as well as copies of any such polices. Gorman filed a motion to compel responses to this discovery, which was granted on June 6, 2011. The City was ordered to answer the outstanding discovery by June 21, 2011. The City identified Lexington as its insurer under a policy bearing number 031428128. Following receipt of the discovery responses, Plaintiff filed an amended petition naming Lexington Insurance Company as an additional defendant on November 7, 2011. Lexington answered the petition, asserting several affirmative defenses and denying coverage.

On March 12, 2012, Lexington filed a motion for summary judgment alleging that there was no coverage under the policy it issued to the City because coverage for the alleged damage only extended to claims first made against the City and reported to Lexington in writing during the policy period. In support of its motion, Lexington submitted a certified copy of the policy and an affidavit of Stephen Burwell to authenticate the policy. Lexington also submitted the original and supplemental petition along with the Sheriff's returns showing service for each. Lexington alleged that the subject policy was a claims made and reported Law Enforcement Professional Liability Policy which required three things: (1) that the wrongful act occur on or after the retroactive date of the policy (here, April 17, 2005); (2) that the claim be first made against the City during the policy period (here, April 17, 2010, to April 17, 2011); and (3) that the claim be reported to Lexington in writing during the policy period. Lexington argued that it provided no coverage in this instance because the claim had not been reported to it in writing during the policy period. Neither Gorman nor the City submitted any evidence in opposition to Lexington's motion; however both filed motions for summary judgment seeking a determination that Lexington did provide coverage for the damages alleged by Gorman. The trial court agreed with Lexington and granted summary judgment in favor of Lexington dismissing all claims against it with prejudice. The motions for summary judgment filed by Gorman and the City were denied. The judgment was designated as a final and appealable judgment, and this appeal followed.

## DISCUSSION

"Interpretation of an insurance policy generally involves a legal question which can be resolved properly in the framework of a motion for summary judgment." *Burmaster v. Plaquemines Parish Gov't*, 10-1543, p. 4 (La.App. 4 Cir.

3/30/11), 64 So.3d 312, 316 (citing *Bonin v. Westport Ins. Corp.*, 05-886, p. 4 (La.5/17/06), 930 So.2d 906, 910). Moreover, it is well settled that:

> We review a summary judgment determining insurance coverage de novo, using the same criteria for these insurance issues as those governing the trial court's consideration of whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). "Where the meaning of a contract is to be determined solely from the words upon its face, without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court's findings." *Id*. at 345. Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

*Regions Bank v. Kountz*, 05-1106, pp. 4-5 (La.App. 3 Cir. 5/31/06), 931 So.2d 506, 510.

It is undisputed that Lexington issued policy number 031428128 to the City. The policy is clearly identified as a claims made policy. The declaration sheet clearly provides the following notice: "THIS IS A CLAIMS MADE POLICY. COVERAGE IS LIMITED GENERALLY TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO US WHILE THE COVERAGE IS IN PLACE." Furthermore, Section I of the policy provides, in pertinent part:

> A. We shall pay those amounts that the Insured becomes legally obligated to pay to compensate others for bodily injury, property damage, or personal injury arising out of the Insured's wrongful act. The wrongful act shall take place on or after the retroactive date, but before the end of the policy period, and shall arise solely in your capacity as a law enforcement agency. A claim for wrongful act shall be first made against the Insured and reported to us in writing during the policy period or any extended reporting period we provide under this policy.

The policy period was from April 17, 2010, to April 17, 2011. The retroactive date of the policy was April 17, 2005. Lexington admits that the alleged wrongful act

occurred after the retroactive date of the policy and that the City was put on notice of the claim during the policy period. Lexington avers, however, that there is no coverage under this policy because it was neither notified in writing of the claim nor did the City report the claim to it until it was served with the amended petition on September 22, 2011, well after the expiration of the policy period at issue.

Gorman and the City argue that coverage should be provided because there was no lapse in coverage, i.e. because the City renewed its coverage with Lexington, the city was effectively extending the policy period. Lexington, on the other hand, argues that even though it renewed the City's coverage, there are two separate policy periods that cannot be "merged into one" as Gorman and the City allege. To do so would render the policy language requiring that the claim be first made against the insured and reported to the insurer within the same policy period moot. This court and our supreme court have often recognized that insurers may use clear and unambiguous notice provisions to "limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract." *Regions*, 931 So.2d at 511 (quoting *Livingston Parish Sch. Bd. v. Fireman's Fund Am. Ins. Co.*, 282 So.2d 478, 481 (La.1974)).

We do not agree with Gorman and the City's reasoning that the policy periods have "merged into one." We rely instead on the strikingly similar case of *Murray v. City of Bunkie*, 96-297 (La.App. 3 Cir. 11/6/96), 686 So.2d 45, *writ denied*, 97-514 (La. 5/9/97), 693 So.2d 767. In that case, a former inmate of the Bunkie city jail filed suit against the City of Bunkie (Bunkie), a Bunkie police officer, United Community Insurance Company (UCIC), and International Surplus Lines Insurance Company (ISLIC), alleging that he suffered damages while incarcerated because he was denied access to ulcer and heart medication. ISLIC filed a motion for summary judgment, denying coverage based on the allegation

4

that Bunkie did not inform it of the claim within the policy period. The policy in *Murray* was a claims made policy which specifically required that "the Insured shall, as soon as practicable and within the policy period, give written notice" to the insurer. In opposition to the motion, Bunkie filed an affidavit of the City Clerk asserting that she forwarded a demand letter from Murray to Bunkie's insurance agent and that after further investigation she determined that insurance was provided by ISLIC and forwarded the suit to ISLIC on August 17, 1994 (after the expiration of the applicable policy period). This court found that as to the issue of coverage between the insured and the insurer, *Livingston* controlled to defeat that claim under the terms of the contract. The court cited *Livingston*, 282 So.2d at 482: "No reasonable expectation of coverage by the insured was defeated by the unambiguous provision clearly limited [sic] coverage to those claims discovered and reported during the policy period." *Id*. at 48. However, as to the claim of the injured third party, this court found that *Livingston* was not controlling because it "did not address the issue of coverage in the context of a claim by an injured third party against the insurer." *Id*. This court specifically found that the direct action statute, at that time enumerated as La.R.S. 22:655, gave the injured party a vested right (which vests at the time the tort is committed) that "could not be taken away because of the insured's failure to notify the insurer—a condition over which the plaintiff had no control." *Id*. at 50. This court held "that notice provisions could not be used as a coverage defense against third parties who had no knowledge of the provision and who had taken steps to pursue their legal remedies." *Pittman v. Nutmeg Ins. Co.*, 97-524, p. 5 (La.App. 3 Cir. 3/6/98), 708 So.2d 832, 834. We agree with *Murray* that while the provisions in the Lexington policy are not per se invalid, the contractual notice provision cannot be used to deprive Gorman of her vested rights under the direct action statute.

**DECREE**

The summary judgment granted to Lexington insofar as it pertains to the City is affirmed. However, the summary judgment granted to Lexington insofar as it pertains to Gorman is reversed. The matter is hereby remanded to the trial court for further proceedings. Costs of this appeal are assessed equally to Lexington and the City.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.